PEOPLE v MANNING

Docket No. 224898. Submitted June 15, 2000, at Detroit. Decided December 15, 2000, at 9:15 A.M.

Tiya Manning was charged in the Wayne Circuit Court with murder and assault with intent to murder. The defendant moved to suppress an inculpatory statement that she had given to the police while she was confined and awaiting arraignment. The defendant had been arrested by the police in the early morning hours of June 15, 1999, and had been placed in a cell in the Inkster police headquarters. Between four and five hours after her arrest, the defendant was informed of her rights by the police and, thereafter, gave a statement to the police. On the morning of June 18, 1999, before she had been arraigned in the district court, the defendant, after indicating to the police that she wished to talk to the police without an attorney present, gave a second statement to the police in which she implicated herself in the homicide. It was the second statement, given some eighty-one hours after her arrest, that she sought to have suppressed as evidence. The circuit court, Sean F. Cox, J., although finding that there was nothing in the record to suggest that the police intentionally delayed arraigning the defendant in the hope of eliciting an incriminating statement, or to support a finding that the second statement was involuntary under the factors set forth in *People v Cipriano*, 431 Mich 315 (1988), nevertheless granted the motion to suppress on the basis that, regardless of the voluntary nature of the statement, the holding in *Riverside Co v McLaughlin*, 500 US 44 (1991), required the suppression of the second statement because of the length of the delay between the arrest and arraignment. The prosecution appealed by leave granted.

The Court of Appeals *held*:

The circuit court erred in suppressing the second statement solely on the basis of the eighty-one-hour delay between the defendant's arrest and release.

1. The holding in *Riverside Co* does not supplant the holding in *Cipriano*, and, indeed, the holdings in those two cases dovetail. The majority in *Riverside Co* held that a delay of more than forty-eight hours between an arrest without a warrant and the arraign-

ment on the charges shifts the burden to the government to show the existence of a bona fide emergency or other extraordinary circumstances that caused the delay and that absent such a showing a delay of more than forty-eight hours is unreasonable per se. *Riverside Co* did not deal with the question of the admissibility into evidence in a criminal prosecution of a statement that had been given to the police after there had been an unreasonable delay between an accused's arrest and arraignment. Under such circumstances, the admissibility of the statement depends on whether the statement was given voluntarily, a determination that requires consideration of all the factors set forth in *Cipriano*, the delay in arraignment being only one of the factors to be considered.

2. Although it appears on the record presented that the second statement was voluntarily given despite the delay in the defendant's arraignment, the circuit court's order suppressing the statement must be reversed and the matter must be remanded to the circuit court with instructions that it make findings of fact under the factors set forth in *Cipriano*.

Reversed and remanded.

KELLY, J., concurring in the result, stated that the circuit court erred in granting the motion to suppress solely on the basis of the delay and that the matter must be remanded to the circuit court to consider the voluntariness of the statement under the totality of the circumstances. The Court of Appeals should not have made any evaluation of the voluntariness of the statement on the basis of the record on appeal.

CRIMINAL LAW — EVIDENCE — CONFESSIONS — VOLUNTARINESS — PREARRAIGN-
MENT DELAY.

Unnecessary delay before arraignment is only one factor to be taken into account in evaluating the voluntariness of a confession; a confession should not be excluded from evidence solely because of prearraignment delay where the totality of the surrounding circumstances indicates the confession was voluntarily given.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training, and Appeals, for the people.

*James L. Feinberg*, for the defendant.

Before: O'CONNELL, P.J., and KELLY and WHITBECK, JJ.

WHITBECK, J. The prosecution in this case appeals by leave granted from a trial court order granting defendant Tiya Manning's motion to suppress an inculpatory statement that she gave to police officers while she was confined and awaiting arraignment. The trial court entered a stay of the proceedings pending the outcome of this interlocutory appeal. In this appeal, we must explore the "fit" between the Michigan Supreme Court's standards for the suppression of a confession following an arrest without a warrant in *People v Cipriano*,[1] and the United States Supreme Court's standards for the delay of a probable cause determination after an arrest without a warrant in *Riverside Co v McLaughlin*.[2] We conclude that *Riverside Co* does not supplant *Cipriano* and that, indeed, the two opinions dovetail. We further conclude that this Court's post-*Riverside Co* decisions in *People v McCray*[3] *and People v Whitehead*,[4] while emphasizing *Riverside Co* and not mentioning *Cipriano*, are not to be read as departing from *Cipriano*. We therefore reverse and remand.

I. BASIC FACTS AND PROCEDURAL HISTORY

The trial court set forth the pertinent facts of this case in its opinion and order granting defendant's motion to suppress:

In the early morning of June 15, 1999, Inkster Police responded to a drive by shooting on Florence Street. At

---

[1] *People v Cipriano*, 431 Mich 315; 429 NW2d 781 (1988).

[2] *Riverside Co v McLaughlin*, 500 US 44; 111 S Ct 1661; 114 L Ed 2d 49 (1991).

[3] *People v McCray*, 210 Mich App 9; 533 NW2d 359 (1995).

[4] *People v Whitehead*, 238 Mich App 1; 604 NW2d 737 (1999).

approximately 1:08 A.M., defendant was arrested by Inkster
Police in regard to a possible role in the homicide that
resulted from the shooting. The defendant spent the night
in a cell in the Inkster police headquarters and at about 5:30
A.M. on the morning of the fifteenth, defendant was read her
rights by Sgt. Hill and gave a statement. On the morning of
June 18, 1999, at about 10:20 A.M., defendant gave Detective
Williams a note stating that she wished to talk to him with-
out an attorney present. Defendant then gave another state-
ment allegedly implicating herself in the homicide. Defen-
dant wishes to have the second statement (June 18, 1999,
10:30 A.M.) suppressed.

The procedural aspect of the police investigation is some-
what involved. The Inkster Police Department is a compara-
tively small police department consisting of approximately
35-40 police officers of whom six are detectives. Of those
six detectives, only one detective (Detective Hines) is spe-
cially designated for homicide cases. In 1999, twelve homi-
cides occurred within the City of Inkster. The first officer in
charge was Detective Abdallah, who was the on call officer
on the night of June 14-15, 1999. Detective Abdallah went
on vacation on the sixteenth and that morning Detective
Williams was assigned to the case. Detective Hines was
assigned to assist Detective Williams as it was his first
homicide investigation. Detective Williams spent the morn-
ing of the sixteenth reviewing the case and that afternoon
proceeded to have a warrant application typed to arraign
the defendant. The application was completed on the morn-
ing of the seventeenth and both Detective Williams and
Detective Hines went downtown to the prosecutor's office
to have the warrant prepared. As this was Detective Wil-
liams' first trip to the homicide unit, Detective Hines went
along.

The warrant application was processed and the two
officers left. Later that afternoon, Detective Williams went
back downtown to pick up the completed warrant. Upon
his return to Inkster, Detective Williams went to the 22d
District Court at or about 3:30-4:30 P.M. on June 17, 1999, to
have defendant arraigned. Unfortunately, the warrant was
incomplete with key documentation missing. Detective

Hines verified that paperwork was missing and that the warrant would have to be redone. The next morning, June 18, 1999, Detective Hines was assigning cases, filling in for another vacationing officer. Detective Williams advised him that defendant wanted to speak with him and Detective Hines advised Detective Williams to get the request in writing. Detective Williams took defendant's second statement. Subsequently, Detective Williams proceeded downtown and received the new warrant and defendant was arraigned that afternoon.

Approximately 81 hours passed between the time defendant was arrested and the time of the second statement.

The prosecution charged Manning with first-degree murder[5] and two counts of assault with the intent to commit murder.[6] Manning successfully moved to quash one of the assault counts. Manning thereafter filed a motion to suppress her statement and conduct a *Walker* hearing.[7] Manning argued that because of the delay in arraignment, her statement was involuntary under the standard announced in *Cipriano, supra.* Following the release of this Court's opinion in *Whitehead, supra,* Manning argued that both *Whitehead* and the United State Supreme Court's decision in *Riverside Co,* mandated that her statement be automatically suppressed because she was held for over eighty hours without arraignment.

In its analysis, the trial court made the following finding:

[T]here is nothing in this record which indicates that the detectives of the Inkster Police Department were motivated by a desire to gain additional information to justify Ms.

---

[5] MCL 750.316(1)(a); MSA 28.548(1)(a).

[6] MCL 750.83; MSA 28.278.

[7] See *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

Manning's arrest and nothing in this record indicates that Inkster detectives intentionally delayed in arraigning Ms. Manning in the hopes of eliciting an incriminating statement. Other than delay, there is nothing in this record which indicates that the factors cited in *Cipriano, supra,* regarding the voluntariness of defendant's second statement taken on June 18, 1999, at 10:20 A.M. exists in this case.

Nevertheless, the trial court emphasized the length of the delay and concluded that *Riverside Co* required it to suppress the statement regardless of its voluntary nature.

## II. STANDARD OF REVIEW

We must determine whether the trial court erred in finding that Manning's confession was involuntary solely on the basis of the length of delay between the time of her arrest and her arraignment. A trial court must view the totality of the circumstances in deciding whether a defendant's statement was knowing, intelligent, and voluntary.[8] This Court will not reverse the trial court's findings regarding those circumstances unless they were clearly erroneous.[9] A finding is clearly erroneous if it leaves us with a definite and firm conviction that the trial court made a mistake.[10] Resolution of this appeal also entails a question of law. We review such questions de novo.[11]

---

[8] *People v Snider,* 239 Mich App 393, 416; 608 NW2d 502 (2000).

[9] *Id.* at 417.

[10] *People v Givans,* 227 Mich App 113, 119; 575 NW2d 84 (1997).

[11] *People v Webb,* 458 Mich 265, 274; 580 NW2d 884 (1998).

III. MICHIGAN PRETRIAL CRIMINAL PRACTICE AND PROCEDURE

#### A. OVERVIEW

A proper understanding of the rather intricate issue of the intersection between the Fifth and Fourth Amendment requirements requires a threshold knowledge of Michigan pretrial criminal practice and procedure. Below, we briefly outline that process.

#### B. ARRESTS

Before making an arrest, a peace officer generally obtains an arrest warrant from a magistrate upon a showing of probable cause. There are two predicates to the issuance of such an arrest warrant: (1) the presentation of a proper complaint alleging the commission of an offense and (2) a finding of "reasonable cause" to believe that the individual accused in the complaint committed that offense.[12] The magistrate may base the finding of reasonable cause on the factual allegations of the complainant in the complaint, the complainant's sworn testimony, the complainant's affidavit, or the supplemental sworn testimony or affidavits of other individuals presented by the complaint or required by the magistrate.[13] MCR 6.102(A) uses the phrase "probable cause" and MCR 6.102(B) states that a finding of probable cause "may be based on hearsay evidence and rely on factual allegations in the complaint, affidavits from the complainant or others, the testimony of a sworn witness adequately preserved to permit review, or any combination of

---

[12] MCL 764.1a; MSA 28.860(1).

[13] *Id.*

these sources." Importantly, a peace officer may arrest a person *without* a warrant if a misdemeanor is committed in the officer's presence or if there is reasonable cause to believe a felony was committed and that the person arrested committed it.[14]

### C. DISTRICT COURT ARRAIGNMENTS

After a person is arrested without a warrant, the arresting officer must bring that person before a magistrate for arraignment "without unnecessary delay."[15] At the arraignment, the magistrate determines whether there is probable cause to believe the person committed the crime. When a person is arrested without a warrant, therefore, no judicial officer has yet found that there was reasonable cause for the arrest. Thus, while all accused persons are "presumptively innocent until proven guilty," when a person is being held without a warrant or probable cause hearing, a judicial officer has not yet determined that there is even reasonable cause to believe the person committed a crime. Therefore, when Justice Scalia referred in his dissent in *Riverside Co* to an "innocent arrestee," he was quite literally correct.[16]

The Fourth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment,[17] prohibits unreasonable searches and seizures. See US Const, Am IV, which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

---

[14] MCL 764.15(1); MSA 28.874(1).

[15] MCL 764.26; MSA 28.885; MCR 6.104.

[16] *Riverside Co, supra* at 71.

[17] *Sodal v Cook Co,* 506 US 56, 61; 113 S Ct 538; 121 L Ed 2d 450 (1992).

and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

According to the United States Supreme Court, a delay of more than forty-eight hours after arrest is presumptively unreasonable, absent extraordinary circumstances.[18] In Michigan, this right to be taken before a magistrate for arraignment without unnecessary delay implicates two sections in the Declaration of Rights of our constitution: § 11, which provides that "[t]he person, house, papers and possessions of every person shall be secure from unreasonable searches and seizures," and § 17, which provides that "[n]o person shall be . . . deprived of life, liberty or property, without due process of law."[19]

### D. PRELIMINARY EXAMINATIONS AND BINDOVERS

The next step in the process is the preliminary examination, which must be conducted within fourteen days of the arraignment.[20] If the court permits the defendant to waive the preliminary examination, it must bind the defendant over for trial.[21] If the defendant does not waive the preliminary examination, each party may subpoena witnesses, offer proofs, and examine and cross-examine witnesses.[22] In a felony matter, if, after considering the evidence, the court determines that there is probable cause to

---

[18] *Riverside Co, supra* at 56-57.

[19] See Const 1963, art 1, §§ 11 and 17.

[20] See also MCL 766.1; MSA 28.919, which entitles the state and the accused to a "prompt" examination.

[21] MCR 6.110(A).

[22] MCR 6.110(C); see also MCL 766.12; MSA 28.930.

believe that the offense has been committed and that the defendant committed it, the court must bind the defendant over to the trial court, generally a circuit court, for trial.[23]

### E. TRIAL COURT ARRAIGNMENT

An arraignment in trial court must be based on an information or an indictment.[24] Generally, the prosecutor uses an information, although grand jury indictments remain an alternative method. Unless a defendant is a fugitive from justice, the prosecutor's information may not be filed until the defendant has had or waives a preliminary examination,[25] but the information must be filed on or before the date set for the trial court arraignment.[26] A defendant may waive trial court arraignment by filing a written statement "acknowledging that the defendant has received a copy of the information, has read or had it read or explained, understands the substance of the charge, waives arraignment in open court, and pleads not guilty to the charge or stands mute."[27] Otherwise, at the trial court arraignment, a defendant may plead not guilty, guilty, nolo contendere, guilty but mentally ill, or not guilty by reason of insanity.

### F. WALKER HEARINGS

In *People v Walker*,[28] the Michigan Supreme Court held that when a defendant contends that statements

---

[23] MCR 6.110(E); see also MCL 766.13; MSA 28.931.

[24] MCR 6.112(B).

[25] *Id.*

[26] MCR 6.112(C).

[27] MCR 6.113(C).

[28] *Walker, supra* at 338.

that had been made were involuntary, the trial court must conduct a hearing outside the presence of the jury to determine the issue of voluntariness, at which the defendant may take the stand without waiving the right not to testify at trial. This right to a pretrial judicial determination of the voluntariness of a criminal defendant's statement derives from the prohibition in the Fifth Amendment of the United States Constitution against compelling a person in a criminal case to be a witness against himself; our Michigan counterpart is in Const 1963, art 1, § 17. The requirement that a defendant's statement be voluntary is based on the recognition that there are means, ranging from outright physical brutality to more refined and subtle methods, for "overcoming a defendant's will."[29] As the United States Supreme Court has said:

"[T]his court has recognized that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition. A number of cases have demonstrated, if demonstration were needed, that the efficiency of the rack and thumbscrew can be matched, given the proper subject, by more sophisticated modes of 'persuasion.' "[30]

A motion to suppress evidence must be made in advance of trial,[31] and this requirement applies to a motion to suppress an involuntary confession.[32] Therefore, a motion for a *Walker* hearing will normally follow the trial court arraignment but precede

---

[29] *Jackson v Denno*, 378 US 368, 389; 84 S Ct 1774; 12 L Ed 2d 908 (1964).

[30] *Id.* at 389-390, quoting *Blackburn v Alabama*, 361 US 199, 206; 80 S Ct 274; 4 L Ed 2d 242 (1960).

[31] *People v Gray*, 45 Mich App 643, 644; 207 NW2d 161 (1973), aff'd 393 Mich 1; 222 NW2d 515 (1974).

[32] *People v Leonard*, 81 Mich App 86, 89; 264 NW2d 130 (1978).

the actual trial. It is at this point that the Fifth Amendment protection against self-incrimination intersects with the Fourth Amendment protection against unreasonable searches and seizures, because a defendant may argue that an unreasonable delay between an arrest without a warrant and the district court arraignment resulted in an involuntary confession. Indeed, the defendants made exactly this argument in *Cipriano*, *McCray*, and *Whitehead*, and it is this argument that Manning makes as well.

### IV. STATEMENT OF THE ISSUE

The issue here is not simply whether Manning's Fourth Amendment rights were violated by the delay. The delay here was clearly more than forty-eight hours and the burden would be on the government to prove that extraordinary circumstances necessitated this delay.[33] The issue instead is whether Manning's statements should be *suppressed* because of the delay. The Michigan Supreme Court in *Cipriano* held that a statement obtained in connection with an unreasonable delay is inadmissible only when the statement was involuntary, as determined by several factors.[34] The decision in *Cipriano* occurred before the United States Supreme Court's decision in *Riverside Co*. Manning argues that the *Cipriano* factors are not applicable here because the confession must be automatically suppressed under the Fourth Amendment exclusionary rule. Therefore, the question becomes whether a *Riverside Co* Fourth Amendment violation is one factor to be considered among the

---

[33] *Riverside Co, supra* at 57.

[34] *Cipriano, supra* at 319.

other *Cipriano* factors or whether such a violation automatically results in suppression of the confession.

## V. SEIZURE AND CONFESSION: CONSTITUTIONAL LIMITS

### A. PURPOSES OF THE FOURTH AND FIFTH AMENDMENTS

As noted above, the Fourth and Fifth Amendments of the United States Constitution are applicable to the states through the Fourteenth Amendment.[35] Further, the Declaration of Rights in the Michigan Constitution also contains state counterparts to these amendments.[36] The Fourth Amendment prohibits unreasonable searches and seizures of persons and property.[37] Thus, it is this amendment that prohibits unreasonable delays between an arrest and a finding of probable cause. The Fifth Amendment prohibits involuntary self-incrimination.[38] It is therefore this amendment that prevents a prosecutor from introducing a confession that was not made voluntarily.[39] When a confession is made during an unreasonable seizure, these two protections intersect.

### B. UNREASONABLE SEIZURES: *RIVERSIDE CO*

In *Gerstein v Pugh*,[40] the Supreme Court held that an arrest becomes unreasonable under the Fourth

---

[35] *Albright v Oliver*, 510 US 266, 272-273; 114 S Ct 807; 127 L Ed 2d 114 (1994); *Sodal, supra.*

[36] See Const 1963, art 1, §§ 11 and 17.

[37] See US Const, Am IV.

[38] See US Const, Am V.

[39] *Dickerson v United States*, 530 US 428; 120 S Ct 2326; 147 L Ed 2d 405 (2000).

[40] *Gerstein v Pugh*, 420 US 103, 114, 125; 95 S Ct 854; 43 L Ed 2d 54 (1975); see also *Riverside Co, supra* at 53.

Amendment if a person is held for an unreasonable time before a judicial officer determines that there was probable cause for the arrest. In *Riverside Co*, the United States Supreme Court held that any delay of more than forty-eight hours must be presumed unreasonable.[41] The burden then falls on the government to demonstrate that extraordinary circumstances necessitated the delay.[42] A shorter delay may also be unreasonable if it was unnecessary.[43] It is significant that *Riverside Co* was a civil case dealing *solely* with the Fourth Amendment prohibition against unreasonable seizures.[44] It did not address the effect of the unreasonable delay on the prosecutor's ability to introduce a confession obtained during the delay.[45]

*Riverside Co* involved a federal class action by Donald McLaughlin seeking injunctive and declaratory relief on behalf of himself and " 'all others similarly situated.' "[46] McLaughlin's "situation" was quite simple. He was incarcerated in the Riverside County Jail and had not received a probable cause determination.[47] A second amended complaint named three additional plaintiffs, individually and as class representatives, and asserted that each of these plaintiffs had been arrested without a warrant, had received neither a prompt probable cause hearing nor a bail hearing, and was still in custody.[48] The federal district

---

[41] *Riverside Co, supra* at 56-57.

[42] *Id.* at 57.

[43] *Id.* at 56.

[44] *Id.* at 47.

[45] *Powell v Nevada*, 511 US 79, 84; 114 S Ct 1280; 128 L Ed 2d 1 (1994).

[46] *Riverside Co, supra* at 47-48.

[47] *Id.* at 48.

[48] *Id.* at 49.

court issued an injunction.[49] The Ninth Circuit Court
of Appeals determined that Riverside County's policy
of providing probable cause determinations within
forty-eight hours of arrest was not in accord with
*Gerstein*, which required a probable determination
" 'promptly after arrest.' "[50]

Riverside County, in a procedure similar to Michi-
gan's, combined probable cause determinations with
arraignment procedures and required arraignments to
be "conducted without unnecessary delay and, in any
event, within two days of arrest."[51] However, the two-
day requirement did not count weekends and holi-
days.[52] Thus, according to the Supreme Court, "an
individual arrested without a warrant late in the week
may in some cases be held for as long as five days
before receiving a probable cause determination" and
"[o]ver the Thanksgiving holiday, a 7-day delay is
possible."[53]

Therefore, the United States Supreme Court in *Riv-
erside Co* had to decide at what point a delay in
arraignment following an arrest without a warrant
became an "unreasonable delay" under the Fourth
Amendment.[54] Importantly, however, the United
States Supreme Court did *not* face the Fifth Amend-
ment question of the voluntariness of confessions
obtained during an unreasonable delay, nor the ques-
tion of the exclusion of such confessions under the
Fourth Amendment.

---

[49] *Id.*

[50] *Id.* at 50, quoting *Gerstein, supra* at 125.

[51] *Riverside Co, supra* at 47.

[52] *Id.*

[53] *Id.*

[54] *Id.*

The Court's answer to the delay issue was reasonably straightforward:

> [W]e believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirements of *Gerstein*. For this reason, such jurisdictions will be immune from systemic challenges.
>
> This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether a delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.
>
> Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fidé emergency or other extraordinary circumstances. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest.[55]

---

[55] *Id.* at 56-57.

Justice Scalia dissented, pointing with some disdain to "this Court's constitutional jurisprudence, which alternately creates rights that the Constitution does not contain and denies rights that it does."[56] In Justice Scalia's view, the promptness requirement in *Gerstein* "left no room for intentional delay unrelated to the completion of 'the administrative steps incident to arrest.' "[57] While acknowledging that he was not certain how to determine an outer limit,[58] he ultimately concluded:

> [A]bsent extraordinary circumstances, it is an "unreasonable seizure" within the meaning of the Fourth Amendment for the police, having arrested a suspect without a warrant, to delay a determination of probable cause for the arrest either (1) for reasons unrelated to arrangement of the probable-cause determination or completion of the steps incident to arrest, or (2) beyond 24 hours after the arrest.[59]

Despite Justice Scalia's more restrictive view, the majority holding in *Riverside Co* is clear. A delay of more than forty-eight hours between an arrest without a warrant and a probable cause arraignment shifts the burden to the government to show the existence of a bona fide emergency or other extraordinary circumstances.[60] Absent such a showing, the delay is unreasonable per se under the Fourth Amendment.[61] Again, however, *Riverside Co* did not deal with the consequences of an unreasonable delay

---

[56] *Id.* at 60.

[57] *Id.* at 63, quoting *Gerstein, supra* at 114.

[58] *Riverside Co, supra* at 67.

[59] *Id.* at 70.

[60] *Id.* at 57.

[61] *Id.*

when, during the delay, a criminal defendant makes a confession to the police.[62]

### C. VOLUNTARY CONFESSIONS: *CIPRIANO*

When *Riverside Co* was decided, the Michigan Supreme Court had already established a test to determine whether a confession made during a delay between arrest and arraignment must be suppressed.[63] The Court did not explicitly analyze this issue under either the Fourth or Fifth Amendment. However, the Court used the language of Fifth Amendment analysis, stating that the prosecutor may introduce a confession if it was made voluntarily.[64] The Court then listed the factors for establishing whether a statement was voluntary.[65]

*Cipriano* involved three defendants, all of whom were apparently arrested without a warrant[66] and held in confinement for forty-six hours or more before arraignment and all of whom made incriminating statements to the police while confined.[67] Defendants Dean and Harrison moved for *Walker* hearings, which are hearings held outside the presence of the jury to determine whether an incriminating statement was voluntary.[68] The trial courts found that their statements were voluntarily given.[69] With respect to defen-

---

[62] *Powell, supra* at 84.

[63] See *Cipriano, supra.*

[64] *Cipriano, supra* at 319.

[65] *Id.* at 334.

[66] The majority opinion in *Cipriano* does not, however, explicitly state that defendant Harrison and defendant Cipriano were arrested without a warrant.

[67] *Id.* at 336-337, 339-341, 346.

[68] *Id.* at 337, 341; see *Walker, supra.*

[69] *Cipriano, supra* at 337, 341.

dant Cipriano, the district court judge held a *Walker* hearing during the preliminary examination and found all of his statements to be admissible.[70] Defendant Cipriano then filed a motion to suppress the statements, on the basis of the length of his detention before arraignment, but the trial court denied that motion after a hearing.[71] All the defendants were subsequently convicted and appealed to this Court and, ultimately, the Michigan Supreme Court, where their cases were consolidated.[72] Clearly, *Cipriano* involved, as does the case we decide today, the admissibility of confessions obtained after a delay—perhaps even an unreasonable                     delay—between an arrest without a warrant and an arraignment. The case therefore squarely addresses the intersection between the Fifth Amendment, which protects against involuntary self-incrimination, and the Fourth Amendment, which protects against unreasonable seizures.

The Court prefaced its decision in *Cipriano* with a comprehensive analysis of the evidentiary consequences of illegal prearraignment detention.[73] It outlined the *McNabb-Mallory* rule[74] and the congres-

---

[70] *Id.* at 347.

[71] *Id.*

[72] *Id.* at 319, 335, 339, 345.

[73] *Id.* at 320-330.

[74] Briefly, the *McNabb-Mallory* rule derives from two United States Supreme Court cases, *McNabb v United States*, 318 US 332; 63 S Ct 608; 87 L Ed 819 (1943), and *Mallory v United States*, 354 US 449; 77 S Ct 1356; 1 L Ed 2d 1479 (1957). In these cases the United States Supreme Court determined that "the right of a suspect to prompt arraignment should be enforced by automatically excluding from evidence any incriminating statement obtained during a period of 'unnecessary delay,' even though the confession was not the result of physical or psychological coercion." *Cipriano, supra* at 320.

sional reaction to that rule in 18 USC 3501.[75] The Court also discussed the history of the *McNabb-Mallory* rule in Michigan.[76] Specifically, it noted[77] that, although the rule was never applicable to criminal proceedings in state courts,[78] Michigan became the first state to adopt the rule in *People v Hamilton.*[79] However, the Court then noted that a split on the issue appeared, beginning with *People v Ubbes*,[80] and that in 1979 a Maryland court suggested that the *McNabb-Mallory* rule had the effect of " 'burning the barn to get rid of the mice . . . .' "[81]

The Court noted further that Michigan prearraignment delay statutes have never included a directive that failure to comply will make a voluntary confession inadmissible.[82] According to the Court, delay in

---

[75] Subsection b of 18 USC 3501 provides:

The trial judge in determining the issue of voluntariness shall take into consideration all of the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement would be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel[,] and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

[76] *Cipriano, supra* at 325-329.

[77] *Id.* at 323, 325.

[78] See *Culombe v Connecticut,* 367 US 568, 600-601; 81 S Ct 1860; 6 L Ed 2d 1037 (1961).

[79] *People v Hamilton,* 359 Mich 410; 102 NW2d 738 (1960).

[80] *People v Ubbes,* 374 Mich 571; 132 NW2d 669 (1965).

[81] *Cipriano, supra* at 330, quoting *Shope v State,* 41 Md App 161, 171; 396 A2d 282 (1979).

[82] *Cipriano, supra* at 333.

arraignment is only one factor that must be considered in evaluating the voluntariness of a confession in Michigan, as well as in the federal courts and a majority of the states.[83] The Court stated that "[t]he test of voluntariness should be whether, considering the totality of all the surrounding circumstances, the confession is 'the product of an essentially free and unconstrained choice by its maker,' or whether the accused's 'will has been overborne and his capacity for self-determination critically impaired.' "[84] The Court then set out the factors for determining whether a statement is voluntary:

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before the magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.[85]

On the basis of these factors, the majority upheld the convictions of all three defendants.[86] Justice CAVANAUGH, joined by Justices LEVIN and ARCHER, dissented and would have reversed and remanded for a new trial for defendant Dean, upheld the conviction

---

[83] Id.

[84] Id. at 333-334, quoting Culombe, supra at 602.

[85] Cipriano, supra at 334.

[86] Id. at 349.

of defendant Harrison, and reduced the conviction of defendant Cipriano to second-degree murder with an option on the part of the prosecutor to retry the defendant for first-degree murder.[87] Justice CAVANAUGH summed up the dissenting viewpoint in one sentence, "We perceive no functional difference between suppressing a confession made during unlawful detention following an illegal arrest and suppressing a confession obtained during a detention made illegal because of unnecessary delay in arraignment."[88]

### D. SUPPRESSION OF CONFESSIONS AFTER RIVERSIDE CO

The tests of *Riverside Co* and *Cipriano* are quite clear. However, the effect of *Riverside Co* on *Cipriano* is not so clear. The state courts that have addressed *Riverside Co*'s effect on their own suppression tests are split.[89] In *Powell v Nevada*,[90] the United States Supreme Court faced the question whether confessions that are voluntary under the Fifth Amendment must still be suppressed because they resulted from an unreasonable seizure under the Fourth Amendment, but declined to answer it. Justice Thomas would, however, have found that the defendant's statement should not be suppressed "because the statement was not a product of the McLaughlin [Riverside Co] violation."[91]

The exclusionary rule generally prohibits the prosecutor from introducing evidence obtained during a

---

[87] *Id.* at 367.

[88] *Cipriano, supra* at 360.

[89] See *New Jersey v Tucker*, 137 NJ 259; 645 A2d 111 (1994); *State v Huddleston*, 924 SW2d 666 (Tenn, 1996).

[90] *Powell, supra* at 85.

[91] *Id.* at 89.

violation of a defendant's Fourth Amendment rights. However, the United States Supreme Court has repeatedly held that a Fourth Amendment violation does not necessarily require the exclusion of evidence obtain as a result of the violation.[92] " 'The question whether the exclusionary rule's remedy is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' "[93] In *Pennsylvania Bd of Probation & Parole v Scott*,[94] which held that the exclusionary rule does not apply in parole revocation hearings, the Court, with Justice Thomas this time writing the majority opinion, noted that it had "emphasized repeatedly that the State's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution."[95] The Court went on to say:

> [A] Fourth Amendment violation is "fully accomplished" by the illegal search or seizure, and no exclusion of evidence from a judicial or administrative proceeding can " 'cure the invasion of the defendant's rights which he has already suffered.' " The exclusionary rule is instead a judicially created means of deterring illegal searches and seizures. As such, the rule does not "proscribe the introduction of illegally seized evidence in all proceedings . . . ," but applies only in contexts "where its remedial objectives are thought most efficaciously served." . . . Moreover, because the rule is prudential rather than constitutionally mandated,

---

[92] *Arizona v Evans*, 514 US 1, 10; 115 S Ct 1185; 131 L Ed 2d 34 (1995).

[93] *Id.*, quoting *Illinois v Gates*, 462 US 213, 223; 103 S Ct 2317; 76 L Ed 2d 527 (1983).

[94] *Pennsylvania Bd of Probation & Parole v Scott*, 524 US 357; 118 S Ct 2014; 141 L Ed 2d 344 (1998).

[95] *Id.* at 362.

we have held it be applicable only where its deterrence benefits outweigh its "substantial social costs."[96]

To our eye, this looks remarkably like an invitation to use precisely the sort of balancing test that the Michigan Supreme Court used in *Cipriano*. The harm caused by excluding a voluntary confession solely on the basis of the delay would outweigh the benefit of this exclusion in deterring unreasonable delays. Other remedies, such as the civil suit in *Riverside Co*, are available to persons held beyond the requirements of *Riverside Co*. Moreover, the delay will be a factor in the *Cipriano* analysis, increasing the possibility that the confession will be found involuntary. A sufficiently long delay in itself will be enough to make a confession involuntary under *Cipriano*. Thus, *Riverside Co* need not, and does not, supplant *Cipriano*. The question then becomes whether this Court, directly or indirectly, has departed from the balancing approach in its post-*Riverside Co* decisions.

### E. MICHIGAN'S POST-*RIVERSIDE CO* DECISIONS

Michigan's courts have not explicitly addressed the effect of *Riverside Co* on *Cipriano*. Few decisions concerning the suppression of confessions have been published since *Riverside Co*. The two recent cases decided by this Court, *McCray* and *Whitehead*, did not expressly apply *Cipriano*, nor did they state that *Cipriano* did not apply.

*McCray* involved a defendant whom the police had arrested without a warrant and held for three days before an arraignment.[97] During his confinement, the

---

[96] *Id.* at 362-363 (citations omitted).

[97] *McCray, supra* at 12.

defendant made an incriminating statement to the police.[98] Clearly, the delay in arraignment was an "unreasonable delay" per se under the *Riverside Co* forty-eight-hour rule. However, this Court did not set aside the statement. Instead, this Court remanded to the trial court for a hearing to ascertain whether the police unreasonably delayed the defendant's arraignment, noting that "[t]he facts suggest that the police were motivated by a desire to gain additional information to justify the arrest and may have intentionally delayed McCray's arraignment in hopes of eliciting an incriminating statement."[99] Thus, while not citing *Cipriano*, this Court remanded for a hearing in which the balancing process set out in *Cipriano* could take place. Nowhere in *McCray* is there any indication that this Court would apply *Riverside Co* in order to suppress a statement made during a delay, even if that delay was presumed unreasonable.

The second Court of Appeals case, *Whitehead*, also involved an arrest without a warrant.[100] As this Court observed, "[a]lmost four days later, after being repeatedly questioned by various police officers, defendant signed a statement admitting that he was one of the men who entered the store and committed the assaults."[101] Again, therefore, the delay in arraignment was unreasonable per se under the *Riverside Co* forty-eight-hour rule. Again, the case presented this Court with the question whether the defendant's confession, obtained by the police during the delay period and under highly questionable circumstances,

---

[98] *Id.* at 11-12.

[99] *Id.* at 12.

[100] *Whitehead, supra* at 3-4.

[101] *Id.* at 5.

should have been suppressed.[102] This Court declined to answer that question, preferring under the doctrine of judicial expediency to decide whether the trial court's failure to suppress was harmless error.[103] We found that any error was harmless beyond a reasonable doubt, in light of the other overwhelming evidence of the defendant's guilt, and therefore affirmed the trial court's decision.[104]

A harmless error analysis, of course, is not appropriate here because this is an interlocutory appeal and it would be impossible to determine at this stage whether any error is harmless. Therefore, we must decide the delay's effect on the confession. This is precisely what this Court did not do in *Whitehead*. Admittedly, however, this Court used very strong language in *Whitehead* in its dicta regarding the delay. We stated:

> Persons arrested without a warrant are "presumptively innocent." *Id.*[105] at 58. A prompt judicial determination of probable cause for an arrest is "one of the most important" protections afforded citizens under the Fourth Amendment's prohibition of unreasonable seizures. *Id.* at 60-61 (Scalia, J., dissenting). To assure that protection, the forty-eight-hour rule established by *Riverside* must be carefully observed by police authorities. Those who ignore that rule will do so at their own peril, running the risk that confessions obtained will be deemed inadmissible and that convictions based on those confessions will be reversed on appeal.[106]

---

[102] *Id.*

[103] *Id.* at 6.

[104] *Id.* at 12.

[105] *Riverside Co, supra.*

[106] *Whitehead, supra* at 13-14.

In making this very strong statement, this Court, as in *McCray*, did not refer to *Cipriano*. However, this Court in its dicta in *Whitehead* clearly did not describe a rule in which confessions obtained during a period of unnecessary delay after an arrest without a warrant would be *automatically* suppressed. Rather, we described a situation in which those obtaining such confessions *ran the risk* of having them deemed inadmissible.[107] Indeed, we stated earlier in the opinion that the decision "provides a warning that statements made by an accused person during a longer detainment *may well* be found inadmissible for purposes of securing a conviction at trial."[108] Thus, *Whitehead* raised the possibility of suppression; it did not require suppression, despite strong evidence there that the police detained the defendant to secure his confession.[109] Under the balancing analysis of *Cipriano*, officers obtaining confessions do run a greater risk of having them suppressed as involuntary when the arraignment is unnecessarily delayed. However, *Whitehead* does not stand for the proposition that such confessions should be *automatically* suppressed.

### F. THE EXCLUSIONARY RULE

We would be remiss if we did not also comment on the purposes of the exclusionary rule. The United States Supreme Court has noted that the Fourth Amendment has never been interpreted to mandate the suppression of illegally seized evidence in all pro-

---

[107] *Id.* at 14.
[108] *Id.* at 4 (emphasis supplied).
[109] *Id.* at 3.

ceedings or against all persons.[110] In *Pennsylvania Bd of Probation*, the Court emphasized that "the State's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution."[111] This Court, in *People v Howard*,[112] referred to the exclusionary rule as a "harsh" remedy and declined to hold that a violation of Michigan's statutory knock-and-announce rule,[113] necessarily required suppression of the evidence. We likewise decline to rule that a *Riverside Co* violation requires an automatic suppression of an inculpatory statement given to police. To adopt a rule mandating exclusion of a defendant's statement made during a violation of the Fourth Amendment's promptness requirement would not further the primary purpose of the exclusionary rule. In our view, the better approach is to consider the violation as a factor in evaluating the overall voluntariness of the statement.

### G. THE TRIAL COURT'S LOGIC

Here, the trial court, relying on *Riverside Co* and referring to *McCray* and *Whitehead*, suppressed Manning's statement *solely* because she gave it more than forty-eight hours after her arrest without a warrant. In so doing, the trial court disregarded the balancing process the Michigan Supreme Court set forth in *Cipriano*. While Manning argues that the trial court never held that the holding of *Riverside Co* overruled the

---

[110] *United States v Leon*, 468 US 897, 906; 104 S Ct 3405; 82 L Ed 2d 677 (1984), citing *Stone v Powell*, 428 US 465, 486; 96 S Ct 3037; 49 L Ed 2d 1067 (1976).

[111] *Pennsylvania Bd of Probation, supra* at 362.

[112] *People v Howard*, 233 Mich App 52, 53, 57; 595 NW2d 497 (1998).

[113] MCL 780.656; MSA 28.1259(6).

holding of *Cipriano*, this argument misses the point. The trial court referred to *Cipriano* as exemplifying the "prior state of the law in Michigan" and declined to apply it. In our view, *Cipriano* remains good law in Michigan. The trial court, however, applied a rule of automatic exclusion nowhere to be found in *Cipriano* and, indeed, nowhere to be found in *Riverside Co*, *Powell*, or *Scott*.

This automatic exclusion is not required by the Fifth Amendment or the Fourth Amendment. The proper analysis is voluntariness under the *Cipriano* factors. The delay of more than eighty hours presumptively violated the Fourth Amendment, but an unnecessary delay does not require automatic suppression of the confession. It is *not* automatic that evidence obtained during a Fourth Amendment violation must be excluded. When a confession was obtained during an unreasonable delay before arraignment, in Michigan the *Cipriano* factors still must be applied. The unreasonable delay is but one factor in that analysis. The longer the delay, the greater the probability that the confession will be held involuntary. At some point, a delay will become so long that it alone is enough to make a confession involuntary.

In engaging in the balancing process that *Cipriano* outlines, a trial court is free to give greater or lesser weight to any of the *Cipriano* factors, including delay in arraignment. A trial court cannot, however, give preemptive weight to that one factor, as the trial court did here. To do so is to adopt a rule of automatic suppression of a confession obtained during the period of delay, a result that is directly contrary to *Cipriano* and that neither *Riverside Co*, *McCray's*, nor *Whitehead* requires.

VI. CONCLUSION

Here, the police held Manning without arraignment for at least eighty-one hours after her arrest without a warrant. The trial court determined that the delay was the result of inexperience, shifts in personnel, and an incomplete warrant package from the prosecutor's office. The sole basis of the trial court's decision to suppress Manning's inculpatory statement was the length of the pre-arraignment delay.

We conclude that the trial court erred in suppressing Manning's inculpatory statement solely on the basis of the delay. The trial court should have instead considered whether the statement was voluntary on the basis of the totality of the circumstances.[114] The record indicates that Manning, who was nineteen years old at the time of her arrest, received Miranda[115] warnings before giving her inculpatory statement. Manning testified that she both read and understood her rights. She further testified that the police did not deprive her of food, water, or sleep. Detective Darian Williams testified that Manning did not appear to be under the influence of any drug or other intoxicant and that she did not appear to need medical attention. Finally, we note that Manning, rather than the police, initiated the discussion that resulted in her giving the inculpatory statement.

On appeal, Manning notes that she gave the statement so that the police would cease their questioning and because she believed that only by doing so would the police permit her to leave. Manning argues that this testimony militates against a finding that the

---

[114] *Cipriano, supra* at 333-334.

[115] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

statement was voluntary. We disagree. Our review of the record indicates only that the officers urged Manning to testify truthfully. Moreover, while the officers may have indicated to Manning that she would be able to go home after giving a statement, the record does not indicate that the officers conditioned her right to leave on doing so.

Here, the trial court focused solely on the length of the delay and concluded that *Riverside Co* required it to apply the exclusionary rule to suppress Manning's inculpatory statement. In our view, as we have outlined above, the trial court was not so constrained. Therefore, we reverse and remand to the trial court to make appropriate findings under the factors established in *Cipriano.*

We note, again, that the rationale behind the exclusionary rule is to deter official misconduct.[116] We are mindful of the warning that this Court issued in *Whitehead.*[117] We therefore recognize the possibility that in some situations the length of the delay alone may be a sufficient ground to suppress a defendant's statement, particularly where the delay is so inexplicably long that it raises an inference of police misconduct. However, we do not deal with such a case here.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

O'CONNELL, P.J., concurred.

KELLY, J. (*concurring in result*). I agree with the majority that the trial court erred in suppressing

---

[116] *United States v Janis*, 428 US 433, 446, 458-459; 96 S Ct 3021; 49 L Ed 2d 1046 (1976); *Cipriano, supra* at 332.

[117] *Whitehead, supra* at 13-14.

defendant's inculpatory statement solely on the basis of the delay and that the court should have, instead, considered the voluntariness of the statement on the basis of the totality of the circumstances under *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988). However, to the extent that the majority attempts to evaluate the voluntariness of the statement in light of the record presented to us, I disagree with that approach. The statement must first be properly evaluated by the trial court. That was not done in this case. Therefore, because the trial court has not yet done so, this Court should not be attempting to evaluate the voluntariness of the statement. We simply do not have all the necessary information to do so. However, because I believe that we must reverse and remand to the trial court to make appropriate findings under the factors established in *Cipriano*, I concur in the result.