# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRANDON SCOTT MANN,

Defendant-Appellant.

UNPUBLISHED
February 7, 2017

No. 329356
Jackson Circuit Court
LC No. 14-005027-FC

Before: M.J. KELLY, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Defendant was convicted of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b following a jury trial.[1] The trial court sentenced defendant as a habitual fourth offender, MCL 769.12, to serve concurrent terms of imprisonment of 60 to 90 years for the murder conviction and five to 20 years for the felon-in-possession conviction. Defendant also received a consecutive sentence of two years' imprisonment for the felony-firearm conviction, with credit for 276 days served. Defendant appeals as of right. We affirm.

## I. FACTUAL BACKGROUND

Defendant and his significant other, April Miller, visited the home of Clayton Orange, an ailing friend of defendant's family. There, they consumed alcohol and defendant and Orange drank alcohol and smoked marijuana. A verbal altercation ensued, the cause of which was disputed. Miller left the scene of the argument after it became physical. According to the defendant, Orange produced a shotgun and the physical altercation escalated. Defendant, who was intoxicated, testified that he subdued Orange admitting to striking him with his fists and grabbing him by the neck. He denied strangling Orange. At some point, defendant exited the trailer, a gunshot was heard, and Miller observed defendant with a shotgun. Numerous witnesses offered testimony regarding events that were observed after defendant exited the trailer. Neighbors arrived at the scene after hearing the gunshot, entered the trailer, and discovered defendant sitting on the couch with the then deceased Orange. Defendant made incriminating

---

[1] The jury found defendant not guilty on a charge of felonious assault, MCL 750.82.

-1-

statements and confronted the neighbors, who withdrew from the trailer. The police arrived later and took defendant into custody. While in custody, defendant made statements to the police that were admitted before the jury. Testimony was presented regarding Orange's physical health, susceptibility to injury and complicated prescription drug regimen. The autopsy recorded that Orange's death was caused by strangulation and blunt force trauma to the head.

Defendant was convicted and sentenced as described above, and this appeal followed.

## II. EVIDENTIARY HEARING

Defendant argues that reversal is required because the trial court decided his motion to suppress statements he made to the police without holding an evidentiary hearing. We disagree.

A trial court's decision whether to hold an evidentiary hearing is reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). However, defendant failed to preserve this issue by requesting an evidentiary hearing below or arguing that one was necessary; accordingly, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750; 763, 597 NW2d 130 (1999). To meet this standard, a party must establish "(1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Vaughn*, 491 Mich 642, 654; 821 NW2d 288 (2012).

Our federal and state constitutions both guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. Statements made during custodial interrogation are inadmissible unless the individual knowingly, intelligently, and voluntarily waived his or her rights under the Fifth Amendment. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Whether a suspect validly waived his or her *Miranda* rights is a question of law for the court to determine on the basis of the "the totality of the circumstances surrounding the interrogation." *People v Cheatham*, 453 Mich 1, 27; 551 NW2d 355 (1996). The relevant analysis is bifurcated; the court must determine (1) whether the waiver was voluntary, and (2) whether the waiver was knowing and intelligent. *People v Daoud*, 462 Mich 621, 639; 614 NW2d 152 (2000). "Whether a statement was voluntary is determined by examining police conduct, but the determination whether it was made knowingly and intelligently depends, in part, on the defendant's capacity." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). "Intoxication from alcohol or other substances can affect the validity of a waiver of Fifth Amendment rights, but is not dispositive." *Id*.

"[W]hen a defendant contends that statements that had been made were involuntary, the trial court must conduct a hearing outside the presence of the jury to determine the issue of voluntariness, at which the defendant may take the stand without waiving the right not to testify at trial." *People v Manning*, 243 Mich App 615, 624-625; 624 NW2d 746 (2000), citing *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965). In considering whether a confession was voluntary, the court should consider all the following circumstances:

> [1] the age of the accused; [2] his lack of education or his intelligence level; [3] the extent of his previous experience with the police; [4] the repeated and prolonged nature of the questioning; [5] the length of the detention of the accused

before he gave the statement in question; [6] the lack of any advice to the accused of his constitutional rights; [7] whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; [8] whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; [9] whether the accused was deprived of food, sleep, or medical attention; [10] whether the accused was physically abused; and [11] whether the suspect was threatened with abuse. [*People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988) (citations omitted).]

No single factor is determinative. *People v Sexton (After Remand)*, 461 Mich 746, 753; 609 NW2d 822 (2000). "The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Cipriano*, 431 Mich at 334.

In the instant case, defendant offered his statement to a detective several hours after his arrest, and his sole basis for seeking its suppression is that he was intoxicated at the time. It is undisputed that he had a .20 blood alcohol level when he was arrested, and a level of .099 when interviewed the following morning.

A trial court must hold an evidentiary hearing when a defendant moves the court to suppress statements he or she made on the ground that the statements were involuntary. *Walker*, 374 Mich at 338; *Manning*, 243 Mich App at 624-625. Defendant does not assert that his statements to the detective were involuntary or that there was any police misconduct. *Tierney*, 266 Mich App at 707. Instead, defendant's argument is that his intoxication rendered him incapable of giving a knowing and intelligent waiver. Defendant cites no authority that stands for the proposition that a court must hold an evidentiary hearing, even when none is requested, to decide a motion to suppress a statement on the ground that it was not knowingly and intelligently offered. Defendant has thus failed to bring plain error to light.

Further, the existing record provides an adequate basis for the trial court's decision not to suppress. The detective who interviewed defendant testified that he waited nine hours after the arrest to question defendant because he realized defendant was not in any condition to talk at the time of his arrest. The detective further testified that he had no reason to believe that defendant was incapable of understanding his rights at the time of the interview. Nothing about defendant's demeanor during the interview—which was recorded and played for the jury— suggests that defendant was unable to understand his rights or intelligently waive them. In the video, defendant appeared alert, did not slur, and spoke in complete coherent sentences in the delivery of his explanation of the event to the detective. Further, defendant does not allege any other circumstance related to his alcohol consumption that impaired his ability to understand his rights or knowingly and intelligently waive them.

Moreover, in light of Miller's and the neighbors' compelling testimony, defendant cannot show that introduction of his statements to the police resulted in the conviction of an innocent man, or otherwise seriously affected the fairness, integrity, or public reputation of the trial. See *Vaughn*, 491 Mich at 654.

For these reasons, we conclude that the trial court's having decided defendant's motion to suppress without holding an evidentiary hearing was not error requiring reversal.

### III. INSTRUCTION ON THE DUTY TO RETREAT

Defendant contends that the trial court erred by declining to sua sponte give jury instruction M Crim JI 7.16, which covers the duty to retreat,[2] and that his trial attorney was ineffective for failing to request that instruction. We address each argument in turn.

We review unpreserved claims of instructional error for plain error affecting substantial rights. *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001). See also *Carines*, 460 Mich at 763. Our Supreme Court has described the necessity of proper jury instructions in criminal cases:

> A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction. However, if an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice. The defendant's conviction will not be reversed unless, after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative. [*People v Riddle*, 467 Mich 116, 124-125; 649 NW2d 30 (2002) (citations omitted).]

---

[2] M Crim JI 7.16 reads as follows:

(1) A person can use deadly force in self-defense only where it is necessary to do so. If the defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the defendant honestly and reasonably believed [he / she] needed to use deadly force in self-defense.

(2) However, a person is never required to retreat if attacked in [his / her] own home, nor if the person reasonably believes that an attacker is about to use a deadly weapon, nor if the person is subject to a sudden, fierce, and violent attack.

(3) Further, a person is not required to retreat if the person:

    (a) has not or is not engaged in the commission of a crime at the time the deadly force is used, and

    (b) has a legal right to be where the person is at that time, and

    (c) has an honest and reasonable belief that the use of deadly force is necessary to prevent imminent [death / great bodily harm / sexual assault] of the person or another.

In the instant case, the trial court did instruct the jury on the use of deadly force in self-defense, M Crim JI 7.15, and the burden of proof where self-defense is asserted, M Crim JI 7.20. Defendant now contends that the trial court should have further instructed the jury on the situation where there is no duty to retreat as an alternative to resorting to deadly force in self-defense. However, defendant fails to show that the duty to retreat was at issue in this case or explain why the outcome would be different had the jury been given M Crim JI 7.16 in addition to the other instructions on self-defense.

We acknowledge that there was testimony that Orange, a man in fragile condition, did produce a shotgun. Defendant himself testified that he grabbed the deceased by the throat while attempting to subdue him but also testified that he had gained control of the weapon from the deceased almost immediately. The undisputed testimony was that strangulation, the alleged cause of death, required sustained pressure for three minutes or more. This was not a circumstance where the trial court was compelled by the totality of the evidence to sua sponte instruct on the duty to retreat. Because the evidence only minimally supported a self-defense theory in the first instance, it was not plain error for the trial court to decline sua sponte to add M Crim JI 7.16 to the self-defense instructions it did provide.

Defense counsel was not ineffective for declining to request the instruction. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Id*. at 81. Where there has been no evidentiary hearing in connection with a claim of ineffective assistance of counsel, review of the claim is limited to the existing record. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

In this case, because defendant fails to show that the outcome of the trial would have been different had the jury been instructed in the matter. The jury heard defendant's incriminating statements to his neighbors, the multiple versions of the offense he gave to a cellmate and extensive medical evidence. Given the overwhelming weight of that evidence, we must reject his claim of ineffective assistance of counsel.

## IV. SCORING OF THE SENTENCING GUIDELINES

Defendant argues that the trial court improperly assessed 50 points for Offense Variable 7. We disagree. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding is clearly erroneous if, after a review of the entire record, the appellate court is left with a definite and firm conviction that a mistake has been made." *People v Gistover*, 189 Mich App 44, 46; 472 NW2d 27 (1991). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 7 covers aggravated physical abuse, and, at the time relevant,[3] a score of 50 points was prescribed where the "victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "Torture" for this purpose means "inflicting excruciating pain, as punishment or revenge, as a means of getting a confession or information, or for sheer cruelty." *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), (citation omitted) rev'd on other grounds sub nom *People v Hardy*, 494 Mich 430; 835 NW2d 340 (2013). "Excessive brutality" means "savagery or cruelty beyond even the 'usual' brutality of a crime." *Glenn*, 295 Mich App at 533.

We conclude that the evidence presented at trial supported the score of 50 points. Miller testified that defendant accused Orange of raping his mother and punched Orange in the eye so forcefully that the blow "instantly turned his skin color." She further asserted that defendant "climbed on top" of Orange and continued to punch him in the face. And, again, the forensic pathologist who performed the autopsy concluded that the cause of death was strangulation in combination with blunt force trauma to the head, and estimated that it would have taken three minutes for Orange to die by strangulation. This evidence supported the conclusion that defendant severely beat and then strangled the ailing Orange out of anger, in other words inflicted excruciating pain as punishment or revenge. Defendant's decision to beat Orange before finally strangling him also suggests excessive brutality and cruelty beyond the usual brutality required to commit murder.[4]

Defendant also contends that the trial court erred for not having scored the guidelines for his felon-in-possession conviction. We disagree.

The statutory sentencing guidelines are no longer mandatory, but trial courts must still consult the guidelines and take them into account at sentencing. *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502, cert den sub nom *Michigan v Lockridge*, ___ US ___; 136 S Ct 590; 193 L Ed 2d 487 (2015). Nevertheless, a sentencing court is "not required to independently score the guidelines for and sentence the defendant on each of his concurrent convictions if the court properly scored and sentenced the defendant on the conviction with the highest crime classification." *People v Lopez*, 305 Mich App 686, 690; 854 NW2d 205 (2014). When a court imposes several concurrent sentences, it need not score the guidelines for the lower crime-class offenses "because MCL 771.14(2)(e) provides that presentence reports and guidelines calculations were only required for the highest crime class felony conviction." *Id.* at 691 (internal quotation marks omitted). This is because, with concurrent sentences, the sentence for the higher-crime-class offense would "subsume the guidelines range for lower-crime-class offenses, and there would be no tangible reason or benefit in establishing guidelines ranges for

---

[3] MCL 777.37(1) was amended by 2015 PA 137, effective after the trial and sentencing in this case.

[4] Defendant protests that he was not attempting to induce fear or anxiety, but in doing so fails to appreciate that OV 7 may be scored for excessive brutality or torture as well as for causing increased fear and anxiety in the victim.

the lower-crime-class offenses." *Id*. at 691-692. In this case, because felon-in-possession is a lower crime-class offense than second-degree murder,[5] and defendant received concurrent sentences for those two convictions, the trial court correctly scored the guidelines for the murder conviction only.

## V. STANDARD 4 BRIEF

Defendant filed a brief *in propria persona* pursuant to Administrative Order 2004–6, Standard 4. In this brief, however, defendant did not offer meaningful argument concerning his various claims of error, failed to provide pertinent record citations, and cited no legal authority to support any claim of error. Thus, we conclude that defendant abandoned any claim of error stated in his brief. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) (an appellant's failure to support assertions of error with meaningful analysis constitutes abandonment of the issue); *People v Jones (On Rehearing)*, 201 Mich App 449, 456-457; 506 NW2d 542 (1993) (a party's mere assertion that the party's rights were violated, unaccompanied by record citations, cogent argument, or supporting authority, is insufficient to present an issue for consideration by this Court).

Affirmed.

/s/ Michael J. Kelly
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien

---

[5] Compare MCL 777.16m (stating that felon-in-possession is a class E felony) with MCL 777.16p (classifying second-degree murder as a class M2 felony with a maximum penalty of imprisonment for life).