PEOPLE v McKINNEY

Docket No. 228530. Submitted February 15, 2002, at Detroit. Decided May 3, 2002, at 9:10 A.M. Leave to appeal sought.

Antoine M. McKinney was convicted following a bench trial in the Wayne Circuit Court, Richard P. Hathaway, J., of second-degree murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony. Before trial, the defendant moved to suppress as evidence two inculpatory statements that he had given to the police after he had been held in police custody without arraignment for more than forty-eight hours. Following a hearing at which evidence was presented that the defendant had been held in police custody after he had come in and had given an exculpatory statement on the evening of October 4, 1999, that before the defendant had given his first incriminating statement around midday on October 7 he had been advised of his constitutional rights, that the defendant had not asked for an attorney, that no threats or promises had been made to the defendant, that it did not appear that the defendant was under the influence of drugs or alcohol or was in need of medical treatment, and that the defendant was finally arraigned on October 9, the court concluded that the statements were voluntary and denied the motion to suppress. The defendant appealed.

The Court of Appeals held:

1. The Michigan Supreme Court in People v Cipriano, 431 Mich 315 (1988), held that although a delay of more than forty-eight hours between arrest and arraignment is presumptively unreasonable, such a delay does not automatically require the suppression of statements obtained during the detention period; rather, the admissibility of a statement obtained under such circumstances turns on an analysis of its voluntariness in which the unreasonable delay in the arraignment is but one factor to be considered. The trial court, after considering the totality of the circumstances, including the delay in the arraignment, found that the two inculpatory statements had been given voluntarily. Under the circumstances of this case, it cannot be said that the trial court clearly erred in concluding that the statements were voluntary.

2. It would appear that the Court in *People v Manning*, 243 Mich App 615 (2000), properly concluded that the holding of the United States Supreme Court in *Riverside Co v McLaughlin*, 500 US 44 (1991), did not supplant the holding in *Cipriano*. In any event, MCR 7.215(I)(1) requires that the holding in *Manning* be followed.

3. The question whether the challenged statements should have been suppressed because they were the fruit of an illegal arrest is not properly before the Court of Appeals, because the defendant has not made that argument on appeal but has rather focused on whether the statements should have been suppressed because of the delay between his arrest and arraignment.

Affirmed.

JANSEN, P.J., dissenting, stated that the trial court erred in denying the defendant's motion to suppress the inculpatory statements because they were the product of both an illegal arrest and an unreasonable five-day delay between the defendant's arrest and his arraignment. Because the defendant's arrest was clearly illegal, having been made without a warrant and without probable cause, and because there were no attenuating circumstances breaking the causal connection between the illegal arrest and the giving of the inculpatory statements, the statements should have been suppressed as the fruit of the illegal arrest. Because the delay of more than one hundred hours between arrest and arraignment in this case is presumptively unreasonable and because there was no showing of intervening events breaking the causal connection between the unreasonable prearraignment delay and the giving of the statements, those statements should have been suppressed as the fruit of the unreasonable delay in the arraignment of the defendant. The order denying the defendant's motion to suppress his confessions should be reversed and the matter should be remanded for a new trial.

CRIMINAL LAW — EVIDENCE — CONFESSIONS — VOLUNTARINESS — PREARRAIGNMENT DELAY.

Unnecessary delay before arraignment is only one factor to be taken into account in evaluating the voluntariness of a confession; a confession should not be excluded from evidence solely because of prearraignment delay where the totality of the surrounding circumstances indicates the confession was given voluntarily.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael E. Duggan*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training, and Appeals.

*Ronald D. Ambrose*, for the defendant.

Before: JANSEN, P.J., and ZAHRA and METER, JJ.

METER, J. Defendant appeals as of right from his convictions following a bench trial of second-degree murder, MCL 750.317, assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced him to two years' imprisonment for the felony-firearm conviction and to seventeen to forty years' imprisonment for each of the remaining convictions. We affirm.

This case involves the fatal shooting of Zawadie Walker and the nonfatal shooting of Tamika Beard in Detroit during the early morning hours of October 4, 1999. On October 7, 1999, defendant, while in police custody, gave two inculpatory statements in which he admitted shooting the victims. Defendant's sole argument on appeal is that evidence of these inculpatory statements[1] should have been suppressed at trial because he made the statements after being detained by police, without a warrant, for more than forty-eight hours.[2]

"We review de novo a trial court's ultimate decision on a motion to suppress." *People v Beuschlein*, 245 Mich App 744, 748; 630 NW2d 921 (2001). We review the trial court's underlying findings of fact, however, for clear error. *Id.* "A finding of fact is clearly errone-

---

[1] At certain points in his appellate brief, defendant refers to his inculpatory "statement" made on October 7, 1999. However, because defendant in fact made two inculpatory statements on October 7, we presume he is contending that both statements should have been suppressed.

[2] Defendant entered police custody on the evening of October 4, 1999, gave his inculpatory statements midday on October 7, and was arraigned on October 9.

ous if it leaves us with a definite and firm conviction that the trial court made a mistake." *People v Manning*, 243 Mich App 615, 620; 624 NW2d 746 (2000).

Contrary to the dissent's conclusion, this case is easily resolved by relying on *Manning, supra,* in which the defendant made an argument similar to that raised in the instant case. The *Manning* Court held that although a delay of more than forty-eight hours between arrest and arraignment is presumptively unreasonable, such a delay does not automatically require the suppression of statements obtained during the detention period. *Id.* at 631, 643. The Court stated the following with regard to the issue of suppression:

> [A]utomatic exclusion is not required . . . . The proper analysis is voluntariness under the *Cipriano* [*People v Cipriano*, 431 Mich 315; 429 NW2d 781 (1988)] factors. The delay of more than eighty hours presumptively violated the Fourth Amendment, but an unnecessary delay does not require automatic suppression of the confession. It is *not* automatic that evidence obtained during a Fourth Amendment violation must be excluded. When a confession was obtained during an unreasonable delay before arraignment, in Michigan the *Cipriano* factors still must be applied. The unreasonable delay is but one factor in that analysis. The longer the delay, the greater the probability that the confession will be held involuntary. At some point, a delay will become so long that it alone is enough to make a confession involuntary.
>
> In engaging in the balancing process that *Cipriano* outlines, a trial court is free to give greater or lesser weight to any of the *Cipriano* factors, including delay in arraignment. A trial court cannot, however, give preemptive weight to that one factor . . . . To do so is to adopt a rule of automatic suppression of a confession obtained during the period of delay . . . . [*Manning, supra* at 643 (emphasis in original).]

Accordingly, the issue facing us in the instant case is simply whether the trial court clearly erred in analyzing and applying the *Cipriano* factors. See *id.* at 620. The *Cipriano* Court set forth the following nonexclusive list of factors for use in determining whether a statement is voluntary:

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Cipriano, supra* at 334.]

See also *Manning, supra* at 635.

Here, in holding that defendant's statements were voluntary, the trial court stated:

> This Court notes that looking at the totality of the circumstances, this case did take a couple of days for the police to sort out. Due to the fact that the defendant made different statements, and due to the fact that the police tried to follow through on the statements that he made through their investigative tactics; and their investigations.
>
> I do believe that the police bent over backwards trying to accomodate [sic] this particular defendant.
>
> The defendant was not lacking in food, water or sleep, nor medications. All the statements that he did make, looks as though the police did mirandize him.
>
> This Court believes that the statements were given in a voluntary fashion.

We are not left with a definite and firm conviction that the court erred in reaching this conclusion. *Manning, supra* at 620. Indeed, the following evidence supported the trial court's ruling that the statement was voluntary: (1) Detective Andrew Sims' testimony that before he obtained the first incriminating statement from defendant on October 7, defendant read and initialed a document setting forth his constitutional rights, (2) Sims' testimony that defendant did not ask for an attorney, (3) Sims' testimony that he made no threats or promises to defendant, (4) Detective Barbara Simon's testimony that before she obtained the second incriminating statement from defendant, he read out loud his constitutional rights and initialed a document indicating that he had "not been threatened or promised anything" and that he "agree[d] to answer any questions put [to] me or to make a statement," (5) Simon's testimony that she did not make any threats or promises to defendant, (6) Simon's testimony that defendant did not appear to be under the influence of drugs or alcohol, (7) Simon's testimony that defendant did not mention any medical needs that required treatment, and (8) defendant's testimony that he was nineteen years old and had completed eleven years of school at the time he made the statements. Additionally, there was no allegation that defendant had been deprived of food, water, or sleep before making the statements. Under these circumstances, we find that the trial court did not clearly err in concluding that the statements were voluntary and in thus failing to suppress them, despite the fact that *some Cipriano* factors weighed

in favor of defendant.[3] See, generally, *Manning,
supra* at 644-645.

The dissent questions the holding of *Manning,*
implying that the *Manning* Court failed to interpret
and apply properly the United States Supreme Court's
decision in *Riverside Co v McLaughlin,* 500 US 44,
56-57; 111 S Ct 1661; 114 L Ed 2d 49 (1991), in which
the Court emphasized that a delay of more than forty-
eight hours between arrest and a judicial determina-
tion of probable cause is presumptively unreasonable.
We disagree with this implication and conclude that
*Manning* properly addressed the effect of *Riverside*
on existing Michigan law. Moreover, we note that
under the Michigan Court Rules, we are bound to fol-
low the rule of law set forth in *Manning.* As stated in
MCR 7.215(I)(1), "A panel of the Court of Appeals
must follow the rule of law established by a prior
published decision of the Court of Appeals issued on
or after November 1, 1990 . . . ." Under *Manning,* the

---

[3] The dissent contends that we are failing to consider the effect of the
presumptively unreasonable prearraignment delay in this case. We dis-
agree with this contention. Indeed, the prearraignment delay is *one* factor
in our consideration, but enough other factors weigh in favor of voluntari-
ness so that the statements were admissible. As noted earlier, *Manning*
states as follows:

It is *not* automatic that evidence obtained during a Fourth
Amendment violation must be excluded. When a confession was
obtained during an unreasonable delay before arraignment, in
Michigan the *Cipriano* factors still must be applied. The unreason-
able delay is but one factor in that analysis. The longer the delay,
the greater the probability that the confession will be held involun-
tary. At some point, a delay will become so long that it alone is
enough to make a confession involuntary. [*Manning, supra* at 643
(emphasis in original).]

Here, we conclude that the delay was not so long that "it alone [was]
enough to make [the] confession[s] involuntary," see *id.,* and enough *Cip-
riano* factors weighed in favor of admissibility so that the statements
were admissible.

trial court did not err in admitting defendant's statements.

The dissent further contends that reversal is required here because the challenged statements were the fruit of an illegal arrest. It is true that in *Taylor v Alabama*, 457 US 687, 690; 102 S Ct 2664; 73 L Ed 2d 314 (1982), the United States Supreme Court noted that a confession, even if voluntary, should be excluded from trial if it resulted from a custodial interrogation after an illegal arrest and if intervening events did not serve to break the causal connection between the illegal arrest and the confession. However, defendant *does not make* this "fruit of the poisonous tree" argument on appeal. Indeed, while defendant makes references to the illegality of his longer-than-forty-eight-hour detention, he does not develop a reasoned argument or cite any case law regarding the alleged *initial* illegality of his arrest and the resulting consequences under the doctrine set forth in *Taylor*. Nor did defendant make a reasoned argument or cite relevant case law below with regard to this issue.[4] Instead, defendant focused below and focuses on appeal solely on the delay between his arrest and arraignment and contends that this delay mandated the exclusion of his inculpatory statements. We do not agree with the dissent's desire to resolve this case on the basis of an issue not raised by the appellant.

Moreover, we do not agree with the dissent's desire to make essentially a factual finding regarding the illegality of the initial arrest. Contrary to the dissent's

---

[4] Because defendant did not make this argument below, the trial court did not rule on it. Instead, the court focused solely on the prearraignment delay and the issue of voluntariness.

representation, the illegality of the initial arrest was not conclusively established below. The primary investigating officer, James Fisher, testified that after defendant came to the police station on the evening of October 4, 1999, he gave a statement regarding the shootings. On the basis of this statement, Fisher interviewed additional people, whose statements conflicted with defendant's. Fisher testified that at this point defendant was arrested. It is not clear from this testimony that probable cause was lacking for the initial arrest. The dissent correctly notes Fisher's statement that at a point after defendant was arrested, Fisher did not believe he had enough information to request formally a warrant. We do not believe, however, that this statement should be equated with a conclusive admission that probable cause was lacking. Indeed, Fisher may have concluded that while he did have probable cause to arrest defendant, he preferred to conduct an additional investigation before formally presenting his evidence to the magistrate. Accordingly, by stating that defendant was illegally arrested, the dissent is essentially making a factual finding, and it is not the role of appellate courts to make factual findings. At any rate, because defendant does not raise the issue of an initial illegal arrest on appeal, we need not resolve the issue and can rest our holding today on this Court's opinion in *Manning, supra* at 643.

Affirmed.

ZAHRA, J., concurred.

JANSEN, P.J. (*dissenting*). I respectfully dissent. I would hold that the trial court erred in denying defendant's motion to suppress his inculpatory statements

because (1) they were the product of an illegal arrest
and (2) they were the product of an unreasonable
five-day delay between the arrest and the
arraignment.

This case involves the fatal shooting of Zawadie
Walker and the nonfatal shooting of Tamika Beard
during the early morning hours of October 4, 1999, in
the city of Detroit. Walker and Beard were in Walker's
vehicle, sometime between 3:00 A.M. and 4:00 A.M.,
when they were shot. Walker ultimately died of his
wounds, while Beard survived, although she was shot
in the back of the head and spent about a month in
the hospital. Beard testified at trial that she knew
defendant and, in fact, was dating defendant's twin
brother. According to Beard, she and Walker fell
asleep in the car and she heard six or seven gunshots.
Walker fell over into Beard's lap, and Beard heard "a
lot of arguing" and then more gunshots that were not
fired at the car. Beard stated that she saw a man,
identified as "B. B.," standing next to the car, but she
did not see defendant. Beard testified that B. B. shot
her because she had seen him with a gun. She
acknowledged, however, that someone else also had a
gun, but she did not know who.

There were no eyewitnesses who actually named
defendant as the shooter. Karriem Respress testified
that during the evening of October 3, Walker pull-
ed up in his car with "J. J." and "Wee-Wee" while
Respress and defendant were outside Respress'
house. Respress went inside his house while defen-
dant remained outside. A few minutes later, defen-
dant was banging on the door and Respress' mother
let defendant in. According to Respress, defendant
then "dropped his stuff on the ground" and said, "I am

going to kill those niggers, . . . they jumped on me."
Respress later testified that defendant also said
"[s]omething about I [defendant] am going to call
B. B." Respress' mother then looked out the door, but
no one was there, and she told defendant to go home.

Police officers recovered six spent shell casings
from the scene. It was determined that there were
two different weapons used (both nine-millimeter
guns), each firing three shots.

Before trial, defendant moved to suppress his state-
ments, given to the police on October 7, 1999. A
*Walker*[1] hearing was conducted on January 5, 2000,
and February 23, 2000. Investigator James Fisher,
who was assigned to the case on the morning of
October 4, 1999, was the first to testify. Later in the
day of October 4, Investigator Fisher had contact with
Richard Ward, who stated that defendant might be
involved in the homicide. Investigator Fisher then
found and spoke with defendant's mother. At about
8:30 P.M., defendant arrived at the police station with
his parents. Defendant stated that, on the basis of
what Investigator Fisher and Investigator Barbara
Simon told him, he believed that he would be able to
give the police a statement and then could go home.

Investigator Simon, after informing defendant of his
*Miranda*[2] rights, took his statement at about 9:20 P.M.
Defendant denied being involved in the shooting, but
named several people who might be involved. Investi-
gator Fisher acknowledged at the hearing that defen-
dant was not free to leave after he gave the statement
to Investigator Simon and that defendant was placed

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).
[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

under arrest because he was a suspect in the crime and so that the police could conduct more investigation as needed. Indeed, Investigator Fisher admitted that the police did not have probable cause at that time to seek an arrest warrant. After defendant gave his statement, Investigators Fisher and Simon took defendant to the neighborhood to point out some houses to the officers where the people named were living. Defendant was then returned to the police station and locked up. Investigator Fisher located the three individuals identified by defendant, interviewed them, and determined that their statements conflicted with defendant's statement.

Defendant remained in the police lock-up and Investigator Fisher conducted a second interview at about 9:00 P.M. on October 5. Investigator Fisher again advised defendant of his constitutional rights, and defendant again denied any involvement in the shooting, although this second statement was inconsistent with the first statement. While Investigator Fisher conducted further investigation into the shooting, defendant was held in the police lock-up.

On the morning of October 7, at about 10:00 A.M., defendant underwent a polygraph examination performed by Investigator Andrew Sims. Investigator Sims advised defendant of his constitutional rights and, after completing his polygraph examination, told defendant that he was not being truthful. Defendant indicated that he would be truthful and tell Detective Sims exactly what happened. Defendant then wrote an inculpatory statement while Investigator Sims left the room to speak with another investigator. Later in the day, on October 7, Investigator Simon took the fourth and final statement from defendant at about

4:00 P.M. after advising defendant of his constitutional rights. Defendant admitted shooting the two victims. In this statement (defendant's most comprehensive statement), defendant's version was that he was outside when Walker drove up in his car and the two were talking. Defendant told Walker that he was going to start selling drugs for B. B., but Walker told defendant that he "was not going to sell in his hood." They began to argue and fight and two other men (J. J. and Wee-Wee) jumped defendant. After speaking with Respress, defendant left and retrieved his nine-millimeter handgun from the backyard of his house. Defendant later saw Walker in his car, and defendant shot at him. Defendant claimed that he never saw Beard in the car and did not mean to shoot her. Defendant stated that he fired four or five shots at the car and ran across the street to an alley, where he put his gun in a trash can behind an apartment building.

After the October 7 statement was given to Investigator Simon, Investigator Fisher typed the arrest warrant information and submitted it. The felony warrant in the record is actually dated October 8, 1999, as is the felony complaint. Defendant was arraigned before a magistrate on October 9, 1999.

At the conclusion of the testimony at the *Walker* hearing, defense counsel argued that the five-day delay between the arrest and the arraignment was unreasonable and that defendant's arrest for an investigation was illegal. The trial court did not address the issues of defendant's arrest or of the prearraignment delay, but merely found that the police informed defendant of his *Miranda* rights and that the statements were voluntary. Thus, the trial court denied

defendant's motion to suppress his confessions, deter-
mining that they were voluntary.

On appeal, defendant argues that he was illegally
detained without a warrant for more than forty-eight
hours while police officers gathered witnesses' state-
ments and interrogated defendant several times,
finally obtaining a confession (in two statements) on
October 7, 1999. Initially, I would find that defendant
was illegally arrested as argued by defense counsel at
the *Walker* hearing.[3] The evidence adduced at the
*Walker* hearing shows that defendant presented him-
self at the police station with his parents at about
8:30 P.M. on October 4, 1999. Defendant believed that
he would give a statement and then be released.
Defendant did give a statement, denying that he was
involved in the shooting, but he was not released.
Instead, the police kept him confined at the station,
and Investigator Fisher stated that defendant was not
free to leave after giving the statement because the
police were still investigating the homicide and that
defendant was under arrest. Investigator Fisher also
admitted that there was not enough information to
request an arrest warrant for defendant at that time,
meaning that the police did not have probable cause
to arrest defendant.

It is without question that defendant's arrest was
unconstitutional because it was made without a war-

---

[3] Defense counsel's specific argument was that defendant was arrested
for an investigation, which is illegal on the basis of current case law. This
argument was properly presented to the trial court and, thus, preserved.
The majority opinion criticizes the argument as being not reasoned, but
this Court has affirmed criminal convictions on many occasions without
the benefit of a prosecutor's brief. We do not need a dissertation of the
law to understand the issue.

rant and was not based on probable cause.[4] The
United States Supreme Court, in a trilogy of cases,
has held that confessions obtained from suspects
arrested without probable cause and later interro-
gated while in custody had to be suppressed, even if
"voluntary," unless intervening events break the
causal connection between the illegal arrest and the
confession so that the confession is "sufficiently an
act of free will to purge the primary taint." *Taylor v
Alabama*, 457 US 687, 689-690; 102 S Ct 2664; 73 L Ed
2d 314 (1982); *Dunaway v New York*, 442 US 200, 217;
99 S Ct 2248; 60 L Ed 2d 824 (1979); *Brown v Illinois*,
422 US 590, 602; 95 S Ct 2254; 45 L Ed 2d 416 (1975).
The Supreme Court identified three factors that
should be considered in determining whether a con-
fession has been purged of the taint of the illegal
arrest: (1) the temporal proximity of the arrest and
the confession, (2) the presence of intervening cir-
cumstances, and (3) the purpose and flagrancy of the
official misconduct. *Taylor*, supra at 690. The pros-
ecution deals with this "fruit-of-the-poisonous-tree"
doctrine at some length in its appellate brief. I would
find, however, that this case requires more than just a
consideration regarding whether the confession is
merely voluntary and that the Fourth Amendment
issue is not being adequately addressed by the
majority.

---

[4] The majority opinion criticizes my decision to address the legality of
the arrest, contending that this is a factual determination that was not
conclusively established below. Investigator Fisher's testimony in this
regard was clear and unequivocal that the police did not have probable
cause at the time of the arrest to seek an arrest warrant. Moreover, the
majority engages in its own factual finding regarding the voluntariness of
the confessions when noting certain factors supporting voluntariness that
were not found by the trial court.

Here, defendant was arrested without a warrant and without probable cause during the late evening hours of October 4, 1999. He was interrogated on October 4, 1999, interrogated again about twenty-four hours later on October 5, 1999, underwent a polygraph examination in the morning of October 7, 1999, and was again interrogated in the late afternoon of October 7, 1999, at which time the police then filed their warrant request. After the first interrogation on October 4, the police took defendant to his neighborhood for him to point out where B. B. could be found. Moreover, Investigator Fisher fully acknowledged that defendant was being held in the police station so that the police could further investigate the case. Under these circumstances, it cannot be said that the confessions given on October 7 are sufficiently an act of free will to purge the primary taint of the illegal arrest. There are simply no intervening events that can be said to break the causal connection between the illegal arrest and the confessions. Given the delay of three days between the arrest and the confessions, I would think that the pressure on defendant would be even greater where the defendant is being kept in a police station jail cell. Further, I find the police conduct to be particularly egregious in this case. The lead officer, Investigator Fisher, acknowledged that the police did not have probable cause to obtain an arrest warrant when defendant was arrested. It should hardly be a revelation to the police that it is illegal to arrest a suspect for investigation of a crime. *Brown, supra* at 602, 605; *People v Davenport*, 99 Mich App 687, 692; 299 NW2d 368 (1980); *People v Martin*, 94 Mich App 649, 653; 290 NW2d 48 (1980).

Accordingly, I would rule that the confessions obtained on October 7, 1999, must be suppressed because they were obtained as a result of an illegal arrest. There are no attenuating circumstances in this case breaking the causal connection between the illegal arrest and the confessions.

Moreover, even if the question of the illegal arrest is not addressed, I would still rule that defendant's confessions must be suppressed because of the delay between the arrest and the arraignment. In *People v Cipriano*, 431 Mich 315, 333; 429 NW2d 781 (1988), our Supreme Court held that unnecessary delay between arrest and arraignment is only one factor to be taken into account in evaluating the voluntariness of a confession obtained during the period of delay. Instead, the "ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Id.* at 334. Thus, unnecessary delay is one factor to consider, and the focus should be not only on the length of the delay, but on what occurred during the delay and its effect on the accused. *Id.* at 334-335.

After *Cipriano* was decided, the United States Supreme Court decided *Riverside Co v McLaughlin*, 500 US 44; 111 S Ct 1661; 114 L Ed 2d 49 (1991), where the Supreme Court defined the Fourth Amendment's requirement of a "prompt" judicial determination of probable cause as a prerequisite to an extended pretrial detention following an arrest without a warrant as having to be made within forty-eight hours of arrest. Specifically, the Supreme Court stated:

[W]e believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein* [*v Pugh*, 420 US 103; 95 S Ct 854; 43 L Ed 2d 54 (1975)]. For this reason, such jurisdictions will be immune from systemic challenges.

This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are *delays for the purpose of gathering additional evidence to justify the arrest*, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest. [*Riverside, supra* at 56-57 (emphasis added).]

The effect of the holding in *Riverside* on *Cipriano* was addressed by this Court in *People v Manning*, 243 Mich App 615; 624 NW2d 746 (2000). This Court

in *Manning, id.* at 638, held that *Riverside* does not supplant *Cipriano,* although a "sufficiently long delay in itself will be enough to make a confession involuntary under *Cipriano.*" This Court further cautioned that "[u]nder the balancing analysis of *Cipriano,* officers obtaining confessions do run a greater risk of having them suppressed as involuntary when the arraignment is unnecessarily delayed." *Id.* at 641. As noted in the majority's opinion, this Court in *Manning* ultimately held that the proper analysis is voluntariness as set forth in *Cipriano,* with unreasonable delay being but one factor in that analysis. *Id.* at 643.

I am not convinced that this Court in *Manning* gave *Riverside* its due effect on *Cipriano.* In *Gerstein, supra* at 125, the United States Supreme Court held that the Fourth Amendment requires a state to "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Riverside* defined "promptly after arrest" as meaning that judicial determinations of probable cause must occur within forty-eight hours of arrest. Consequently, the holding in *Riverside* is grounded in the Fourth Amendment, and indeed, the Supreme Court clearly stated that the Fourth Amendment *requires* a judicial determination of probable cause as a prerequisite to a detention following arrest.[5] While a Fourth Amendment violation need not require automatic suppression, the analysis focuses on whether

---

[5] Our Supreme Court's assertion in *Cipriano, supra* at 332, that "the prompt-arraignment requirement was never elevated by the United States Supreme Court to the level of a constitutional right" does not appear to be correct in light of *Gerstein* and *Riverside.*

the evidence was obtained by exploitation of the defendant's Fourth Amendment rights, in other words, whether the evidence is the product of the illegal governmental activity. See *New York v Harris*, 495 US 14, 19; 110 S Ct 1640; 109 L Ed 2d 13 (1990).

In this regard, it bears noting that our Supreme Court in *Cipriano* went to some lengths to explain that two of the defendants involved had been arrested on the basis of probable cause. See *Cipriano, supra* at 338, 342-343. Thus, the initial arrests were legal, although not made with warrants. Perhaps it is for this reason that our Supreme Court in *Cipriano* did not have to address any Fourth Amendment violation, or at least the interplay between a Fourth Amendment violation and a Fifth Amendment violation.

In the present case, defendant was arrested and held in police detention for over one hundred hours before he was arraigned. Under *Riverside, supra* at 57, this delay is presumptively unreasonable and the government bears the burden of demonstrating the existence of a bona fide emergency or other extraordinary circumstance. The government can do and has done neither here. There is absolutely nothing in the record suggesting that defendant was held for more than one hundred hours because of any emergency or extraordinary circumstance. Rather, defendant was held so that the police could continue to investigate the crime. Moreover, by focusing exclusively on whether the statements to the police were voluntary, the majority opinion does not address the *Riverside* violation. Even the *Manning* Court acknowledged that the "longer the delay, the greater the probability that the confession will be held involuntary" and a long enough delay alone can make a

confession involuntary. *Manning, supra* at 643. Indeed, to not hold otherwise would allow the police to hold an accused indefinitely before an arraignment, but allow an otherwise "voluntary" confession to be admissible at trial.

Therefore, there being a Fourth Amendment violation, I would proceed under the *Brown-Dunaway-Taylor* cases and determine whether there were intervening events breaking the causal connection between the unreasonable prearraignment delay and the confessions so that it can be said that the confessions are an act of free will to purge the primary taint.[6] For the reasons set forth under the illegal arrest analysis, I would hold that there were no intervening events breaking the causal connection between the unreasonable prearraignment delay and the confessions. Moreover, with respect to the unreasonable prearraignment delay issue, I would note that the delay in securing the determination of probable cause allowed the police to gather additional evidence against defendant precisely so that an arrest warrant could be obtained. In other words, the delay certainly has the appearance of being used as a tool to extract defendant's confessions, which were then used to secure his arrest warrant. Once again, because there are no attenuating circumstances breaking the causal chain between the unreasonable

---

[6] I would note that the United States Supreme Court in *Taylor, supra* at 690, emphasized that in "*Brown* and *Dunaway*, this Court firmly established that the fact that the confession may be 'voluntary' for purposes of the Fifth Amendment, in the sense that *Miranda* warnings were given and understood, is not by itself sufficient to purge the taint of the illegal arrest." Similarly, I would be cautious about placing too much emphasis on a finding that a statement is voluntary if it is the product of an unreasonable prearraignment delay.

prearraignment delay and the confessions, the confessions must be suppressed.

The error in admitting the confessions is not harmless beyond a reasonable doubt. *Arizona v Fulminante*, 499 US 279, 307-308; 111 S Ct 1246; 113 L Ed 2d 302 (1991); *People v Anderson (After Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994). The confessions were really the only evidence actually linking defendant to the shooting. Indeed, the surviving victim testified that B. B. shot the gun and that she did not see defendant. Respress' testimony provided a motive for defendant to have shot Walker, but Respress was apparently not an eyewitness to the shooting and did not identify defendant as being the shooter. Further, the forensic evidence showed that there were two different guns involved. The trial court as well used defendant's confessions when rendering its findings and verdict. Consequently, the prosecutor cannot prove beyond a reasonable doubt that the error in admitting defendant's confessions did not contribute to the verdict. *Id.* at 406, quoting *Chapman v California*, 386 US 18, 23; 87 S Ct 824; 17 L Ed 2d 705 (1967).

Accordingly, I would reverse the trial court's ruling that denied defendant's motion to suppress his confessions. The confessions were the product of an illegal arrest and an unreasonable prearraignment delay, and there are no attenuating circumstances breaking the chain between these Fourth Amendment violations and the confessions. I would order that defendant's confessions be suppressed and remand for a new trial.