# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAMIEN MICHAEL SMITH,

        Defendant-Appellant.

UNPUBLISHED
March 7, 2017

No. 330125
Presque Isle Circuit Court
LC No. 14-092892-FC

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and METER, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with intent to murder, MCL 750.83, carrying a weapon with unlawful intent, MCL 750.226, two counts of discharge of a firearm from a motor vehicle, MCL 750.234a, two counts of discharge of a firearm at a dwelling, MCL 750.234b, possession of a loaded gun in a motor vehicle, MCL 750.227c, and six counts of possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to the following concurrent prison terms; 25 to 40 years for the assault with intent to murder conviction; two years for the carrying a weapon with unlawful intent, discharge of a firearm from a motor vehicle, and discharge of a firearm at a dwelling convictions; 16 months to 2 years for the possession of a loaded shotgun in a motor vehicle conviction. Additionally, the trial court sentenced defendant to a consecutive two-year term for the felony-firearm convictions. Defendant appeals as of right and we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On the evening of June 3, 2014, and into the early morning of June 4, 2014, Defendant's former girlfriend, Kayla Allen, was socializing with John Chascsa at Chascsa's residence. Defendant was upset that Allen was at Chascsa's residence, and after calling Allen as many as 15 times, defendant left to meet Chascsa and LaRoche, a friend of Chascsa and Allen's. LaRoche and Chascsa left with the understanding that a fight would ensue. Defendant drove to Chascsa's home two separate times, firing shots into the home on both occasions. Right before the second round of shootings occurred, defendant told Allen on the phone that he was "crazy" and to "watch this."

On June 5, 2014, Alpena Police Detective Sergeant Stephen Davis spoke with the defendant, and defendant stated that on the night of the shootings, he had consumed a half-gallon of alcohol, Heroin, Suboxone, and Concerta. Defendant also told Davis that he had intent to kill Chascsa when he travelled to Chascsa's home. During the course of this interaction, defendant told Davis he shot 16 rounds at the home between the two instances. Rogers City Police Sergeant Jamie Meyer also spoke with defendant and recorded the interview, during which, defendant again admitted of his desire to kill Chascsa. In the recording of defendant and Meyer's interview, defendant admitted to shooting the house seven times on his first drive-by and seven or eight more times on his second drive-by.

Defendant was convicted by a jury in the Presque Isle Circuit Court and appeals as of right arguing that his confession to the police was obtained involuntarily, and thus, in violation of his constitutionally protected Due Process Rights. Additionally, defendant argues that the evidence presented at trial was insufficient to identify him as the perpetrator of the crimes and that it did not demonstrate an intent to kill by clear and convincing evidence.

## II. VOLUNTARINESS OF CONFESSION

Defendant first argues that the trial court erred in denying his motion to suppress his confessions to the police. We disagree. This Court reviews a trial court's decision on a motion to suppress evidence de novo. *People v Henry (After Remand)*, 305 Mich App 127, 137 (2014), citing *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). However, this Court will not reverse the trial court's findings regarding the voluntariness of a confession unless they were clearly erroneous. *People v Manning*, 243 Mich App 615, 620; 624 NW2d 746 (2000). "A finding is clearly erroneous if it leaves [this Court] with a definite and firm conviction that the trial court made a mistake." *Id.*

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. Michigan's constitutional provision against self-incrimination is applied consistently with and "no more liberally than the Fifth Amendment[1] of the United States Constitution." *People v Geno*, 261 Mich App 624, 628; 683 NW2d 687 (2004). "The constitutional privilege against self-incrimination protects a defendant from being compelled to testify against himself or from being compelled to provide the state with evidence of a testimonial or communicative nature." *People v Burhans*, 166 Mich App 758, 761-62; 421 NW2d 285 (1988).

A statement obtained from a defendant during a custodial interrogation is admissible only if the defendant "voluntarily, knowingly, and intelligently" waived his Fifth Amendment rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966); *People v Daoud*, 462 Mich 621, 632-639; 614 NW2d 152 (2000). "The requirement that a defendant's statement be voluntary is based on the recognition that there are means, ranging from outright physical brutality to more refined and subtle methods, for overcoming a defendant's will." *Manning*, 243 Mich App at 625.

---

[1] US Const, Am V.

This Court has found that "a confession is involuntary if obtained by any sort of threat or violence, by any promises, express or implied, or by the exertion of any improper influence." *People v Frazier*, 270 Mich App 172, 182; 715 NW2d 341 (2006), quoting *People v Paintman*, 139 Mich App 161, 171; 361 NW2d 755 (1984). A confession must be the product of an essentially free and unconstrained choice and be made "without intimidation, coercion, or deception." *People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003). Courts must evaluate the totality of the circumstances in order to determine whether the confession was the result of an essentially free choice or was compelled by overcoming a defendant's capacity for self-determination in violation of this constitutional protection. *Geno*, 261 Mich App at 628.

The burden is on the plaintiff to prove voluntariness of a statement by a preponderance of the evidence. *Daoud*, 462 Mich at 634. Defendant's knowledge of his rights before offering a confession is a factor that is also important to consider in determining voluntariness. *Frazier v Cupp*, 394 US 731, 739; 89 S Ct 1420; 22 L Ed 2d 684 (1969).

Here, defendant testified that he was provided *Miranda* warnings and waived those rights. The trial court found that defendant waived his *Miranda* rights during each interview, and that defendant initiated the first interview. Defendant agreed that he was not threatened. "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v McCarty*, 468 US 420, 433 n 20; 104 S Ct 3138; 82 L Ed 2d 317 (1984).

In *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988), the Supreme Court set forth the following non-exhaustive list of factors that should be considered in determining the voluntariness of a statement:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

Defendant argues that his mental state was such that he was pressured into making self-incriminating statements. Defendant stated that he was under the influence of drugs and alcohol at the time of his statement. He reported that he had consumed a half-gallon of whiskey, Heroin, Suboxone, and Concerta on the night of the shooting. However, he testified that he had told Rogers City Police Sergeant Jamie Meyer that he had consumed only alcohol and cannabis. Regardless, defendant had been in custody for approximately 32 hours prior to his first incriminating statement to police, and he made an additional incriminating statement the day following his first statement. Additionally, while defendant reported that the substance abuse continued to affect his mind in some way not only during his statements to police, but also at his

trial 14 months after he confessed, citing long-term effects of his substance abuse, he acknowledged that he was not intoxicated when he spoke to the police. Due to the fact that there was a protracted length of time during which defendant was incarcerated before his statements, and defendant cited long-term effects, rather than intoxication, as having affected his descriptions, it was not demonstrated that defendant provided statements because he was under the influence of substances. Additionally, the interviewing officer did not notice any signs of intoxication, and defendant stated that he did not have access to substances in jail.

Defendant argues that he was compelled to testify because he was concerned about the well-being of his mother, who was incarcerated on a charge related to the case, and he wished to earn her release. Defendant had initially refused to speak to police and was told that his mother was incarcerated before he was returned to his cell. Defendant reported that he then heard his mother who was in a separate room in the jail, that she sounded upset, and that he changed his mind about talking to the police. The United States Supreme Court has said that "coercive police activity is a necessary predicate to finding that a confession is not voluntary within the meaning of the Due Process Clause." *Colorado v Connelly*, 479 US 157, 167; 107 S Ct 515; 93 L Ed 2d 473 (1986). Defendant argues that it was police misconduct to manipulate him into making a statement by exposing him to his mother's distress. However, the interviewing officer respected defendant's desire to not make a statement after informing defendant that his mother had been arrested, and defendant decided to consent to the interview after encountering his mother and considering his situation. The fact that defendant saw or heard his mother was not coercive and was not misconduct. There was no police activity while defendant was in a cell considering his position and ultimately changing his mind and deciding to cooperate. There was no evidence that defendant decided to consent to the interviews based on the behavior of the interviewing officer.

Defendant explained that he made a statement to the police because he would have done anything to free his mother, and that the interviewing officer agreed that he would talk to the prosecutor about dropping charges against his mother. However, the alleged promise to speak to the prosecutor from a different county about defendant's mother was not a promise to free her or make a deal benefiting her in exchange for defendant's statement. According to defendant, he had already decided to speak with the police and offer a version of events that would exonerate his mother, rather than rely on the officer to strike a deal that would free his mother. It is apparent that the circumstances, including the incarceration of defendant's mother for crimes related to those defendant was suspected of committing, motivated defendant's decision to speak with the officer. However, police misconduct did not produce the circumstances that inspired defendant's strategic decision to try to impact his mother's status with his statement. Thus, there was no evidence that defendant was coerced into making the statement by a promise to release, or a threat to prosecute, his mother.

The totality of the circumstances indicated that defendant provided an incriminating statement to Meyer after having been in jail for a day and a half. The evidence did not indicate that defendant was deprived of sleep or that he was under the influence of substances. Defendant was given beverages, cigarette breaks, and access to the bathroom, and the evidence indicated that he spoke freely. Defendant was familiar with the procedures, defendant initiated the interview, defendant waived his *Miranda* rights, and the interview was recorded. Defendant agreed that he was not threatened or denied liquids during the two hours in which he was

interviewed. The evidence did not indicate that defendant's statement was procured as a result of threat, promise, or coercion. To the contrary, the evidence indicated that defendant's statement was a self-motivated and strategic decision made in an attempt to aid his mother in circumstances that were created by their arrests. Thus, the trial court did not err in denying defendant's motion to suppress his confessions because it was demonstrated that the statements were voluntarily given.

## III. INSUFFICIENCY OF EVIDENCE

Defendant argues that the evidence was insufficient to convict him of each of the crimes because of a lack of testimony identifying him as the shooter. Further, he argues that there was insufficient evidence to demonstrate that he intended to kill anyone so as to support his assault with intent to murder conviction. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

Due process[2] requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). To determine if the prosecutor produced evidence sufficient to support a conviction, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, are considered to determine whether the evidence was sufficient to sustain the defendant's conviction. *Hardiman*, 466 Mich at 429.

"[I]dentity is an [essential] element of every offense". *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), citing *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976). However, defendant made statements to the police describing how he had committed the crimes and there was circumstantial evidence that supported defendant's report of his participation in the crimes. John Chascsa and Tom LaRoche testified that defendant called Chascsa a number of times during the evening of the crime to inform him that he was coming to the area, and again called Chascsa when he arrived. Chascsa said that he identified defendant when he walked to an area where he was supposed to meet defendant. LaRoche said that he and Chascsa hid in the bushes as a vehicle matching the vehicle owned by defendant's mother, who said defendant had taken her car that night, stopped and shot at Chascsa's nearby home. After the first shooting, according to Allen, defendant told her he was the person in the car. Moreover, defendant was overheard telling Allen to "watch this" just before a car returned and shot at the house a second time. A 12-gauge shot gun shell was subsequently retrieved from defendant's mother's vehicle. Moreover, defendant advised that he had used a shot gun and one was found where defendant stated that it was hidden. Also, brass shell casings were found in a fire pit behind the home of defendant's mother after defendant informed police that he had attempted to burn the shell casings there.

---

[2] US Const, Am XIV.

Given defendant's admissions that he shot at the house and the circumstantial evidence, i.e., defendant was upset with Allen and Chascsa, he took his mother's Oldsmobile, and someone in a similar Oldsmobile was seen shooting at the house, there was sufficient evidence by which the jury could conclude that defendant was the perpetrator of the charged crimes beyond a reasonable doubt.

Regarding the intent element, assault with intent to murder is a specific intent crime that requires a finding that the defendant acted with the actual intent to kill. *People v Taylor*, 422 Mich 554, 567-68; 375 NW2d 1 (1985); *People v Cochran*, 155 Mich App 191, 193-94; 399 NW2d 44 (1986). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Both Chascsa and LaRoche testified that defendant intended to fight Chascsa at a parking lot, and during the trial defendant testified consistently with these statements. However, Chascsa reported that defendant told him he was coming to kill him. During his confession, defendant clearly expressed intent to kill several times. This included a statement that the target of his desire to kill was Chascsa, but that he would kill others as "collateral damage," that he was hiding in bushes with a shotgun planning to shoot Chascsa and anyone who got in the way, and that he "was gonna kill" Chascsa but he went down an alley and had his friends around him.

Apart from these statements, the intent to kill may be inferred from the use of a deadly weapon. *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999); *People v Dumas*, 454 Mich 390, 403; 563 NW2d 31 (1997). Here, defendant shot at an occupied dwelling a number of times on two separate occasions. During the second recorded interview, defendant recalled shooting at a clear left window and then at the right window when he saw someone dive under the window. Defendant argues that he could not have had the intent to kill because he shot from the street at a building with shot gun pellets. However, there was testimony that the buckshot pellets that were viewed in the apartment walls would have been potentially lethal to a human body. Thus, there was sufficient evidence from which the jury could conclude beyond a reasonable doubt that defendant fired shots with the intent to kill others.

At trial, defendant claimed that he was not being truthful when he previously told the police that he wanted to kill. However, the jury heard all the testimony and determined that defendant's statements to the police and the supporting evidence were credible. This Court will defer to the superior ability of the fact-finder to assess witness credibility and weigh the evidence. *Kanaan*, 278 Mich App at 619.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Peter D. O'Connell
/s/ Patrick M. Meter