# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARC VALENTINO BARRERA,

Defendant-Appellant.

UNPUBLISHED
January 8, 2019

No. 338762
Isabella Circuit Court
LC No. 2016-002389-FH

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

BOONSTRA, P.J. (*concurring*).

The police officers' instincts proved to be correct in this case. But instincts alone do not probable cause make. In the circumstances of this case, the officers should have sought a warrant. I therefore concur with the majority in reversing defendant's conviction and vacating his sentence.

While surveilling a known drug house, to which police had responded on many earlier occasions, they observed a vehicle parked in the driveway. The vehicle also was known to police, as they had pulled it over on many prior occasions, including in this very neighborhood. On at least two of those occasions, drugs were found in the vehicle. On both of those occasions, Edison Pelcher had been a passenger in the vehicle—as he was in this case. The owner of the vehicle did not have a driver's license. The driver of the vehicle, Juaquin Garcia, was unlicensed. Another passenger in the vehicle, Morgan Guerrero, initially lied about her identity by giving police her sister's name; police subsequently determined her identity after Pelcher referred to her as "Morgan" and described defendant as her boyfriend. Police discovered that there were three outstanding warrants for Guerrero's arrest. Pelcher was a parolee and was intoxicated, in violation of the conditions of his parole. Defendant declined to identify himself.[1]

Was something illegal afoot? Well, at a minimum, there was the apparent traffic violation for which the officers had pulled over the vehicle. Garcia was driving the vehicle

---

[1] In fact, defendant appears to have misled officers with assertions suggesting that he held tribal membership.

without a license. And Guerrero was the subject of three outstanding arrest warrants. Garcia and Guerrero were therefore placed under arrest.[2]

But given the officers' base of knowledge about the known drug house at which the vehicle had been parked, the prior drug confiscations from this very vehicle, Pelcher's presence in the vehicle both on those occasions and on this occasion, and defendant's refusal to identify himself, the officers suspected more. That suspicion was a reasonable one, inasmuch as it hardly strains credulity to believe, under the circumstances presented to the officers, that drugs very likely were present in the vehicle on this occasion as well. While there still may be room for argument about whether there was a proper basis for the officers to conduct an initial pat-down search of defendant, I (like the majority) assume for purposes of analysis that there was.

The pat-down search revealed a bulge in defendant's pocket that turned out to be (1) a wad of cash totaling more than $1,000; and (2) 11 empty plastic sandwich baggies. While neither is "contraband" in the sense of being itself illegal, either singularly or in combination, experience reasonably informed the police officers that cash in such a quantity could reasonably have been proceeds from a drug transaction, and that plastic sandwich baggies are commonly used in drug trafficking. Regardless, there is again room for argument about whether the search was conducted properly and whether the cash and baggies were properly discovered. Like the majority, I assume for purposes of analysis that they were.

Having afforded the prosecution the benefit of the doubt in those respects, I am nonetheless compelled to agree with the majority's conclusion that the drugs later found on defendant should have been suppressed. After the pat-down search and the discovery of the wad of cash and plastic baggies, the officers' already reasonable suspicion was arguably heightened. Yet even the prosecution does not contend that the police officers at that point in time had probable cause to arrest defendant. Instead, the prosecution argues that the police had "probable cause to at least detain [defendant] to take him to the jail for fingerprinting to identify him."[3]

---

[2] Pelcher was allowed to leave at the time, but was later arrested after the officers contacted his parole officer.

[3] The prosecution does not contend that defendant's refusal to identify himself was itself unlawful or provided them with probable cause to arrest him. While it has long been the law that "[i]n the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment," *Hiibel v Sixth Judicial Dist Court of Nevada, Humboldt Cnty*, 542 US 177, 185 (2004), citing *INS v Delgado*, 466 US 210, 216; 104 S Ct 1758; 80 L Ed 2d 247 (1984), there was "an open question whether the suspect can be arrested and prosecuted for refusal to answer." *Id.*, 542 US at 186-187, citing *Brown v Texas*, 443 US 47, 53 n 3; 99 S Ct 2637; 61 L Ed 2d 357 (1979). But the Supreme Court answered that question in *Hiibel*, in the context of a Nevada "stop and identify" statute that required a detained person to identify himself in the context of an investigatory stop. The Court held that [a] state law requiring a suspect to disclose his name in the course of a valid [investigatory] stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures." *Id.*, 542 US at 188. Yet, notwithstanding that holding, it does not appear, nor does the prosecution argue, that Michigan

-2-

And take him to the jail they did. Once there, another pat-down search provided both auditory and sensory indications that something was hidden in defendant's crotch area. It also revealed (after the removal of defendant's sweatshirt pursuant to jail policy) a tattoo exhibiting defendant's name. Once the name was run through a database, it was determined that defendant was a parole absconder with outstanding warrants for his arrest. At that point, defendant was formally arrested, and a subsequent strip search revealed a baggie between defendant's legs that was determined to contain cocaine and marijuana. The officers' instincts were validated and their suspicions were confirmed.

Certainly, it is understandable that upon discovering the cash and baggies after the initial pat-down search, the officers would want to identify defendant and continue their investigation into the possibility that he had committed a crime. But the Fourth Amendment[4] exists to protect all citizens from the excesses of government power. See *People v Stevens*, 460 Mich 626, 634; 597 NW2d 53 (1999).

The Fourth Amendment and Michigan Constitution protect against unreasonable searches and seizures (including arrests). US Const, Am IV; Const 1963, art 1, § 11; *People v Earl*, 297 Mich App 104, 107; 822 NW2d 271 (2012), aff'd on other grounds 495 Mich 33 (2014). Generally, before making an arrest, a police officer obtains an arrest warrant from a magistrate by presenting the magistrate with a complaint for arrest. MCL 764.1a; see also *People v Manning*, 243 Mich App 615, 621; 624 NW2d 746 (2000). Before issuing an arrest warrant, the magistrate must find that probable cause exists to believe that the individual accused in the complaint committed the offense of which he is accused. MCR 6.102(A). The magistrate's findings may be based on the "actual allegations of the complainant in the complaint, the complainant's sworn testimony, the complainant's affidavit, or the supplemental sworn testimony or affidavits of other individuals presented by the complaint or required by the magistrate," including hearsay evidence. *Manning*, 243 Mich App at 621; MCR 6.102(B).

Searches and seizures (including arrests) without a warrant are per se unreasonable, unless they are subject to an exception. See *Earl*, 297 Mich App at 107. One of these exceptions is the existence of probable cause. Probable cause to arrest exists when the circumstances "at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony." *People v Nguyen*, 305 Mich App 740, 751-752; 854 NW2d 223 (2014) (quotation marks and citation omitted). "Probable cause requires only a

---

has adopted any such requirement that a detained person identify himself in the course of an investigatory stop. Consequently, defendant's refusal to identify himself to officers was not itself in violation of any law and therefore did not provide the officers with probable cause to arrest him on that basis.

[4] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons and things to be seized." US Const, Am IV; see also Const 1963, art 1, § 11.

probability or substantial chance of criminal activity, not an actual showing of criminal activity," and circumstantial evidence can be sufficient to show probable cause. *Id*. at 752 (quotation marks and citation omitted). When a person is arrested without a warrant, "no judicial officer has yet found that there was [probable] cause for the arrest." *Manning*, 243 Mich App at 622. Therefore, the arrested individual must be brought before a magistrate for arraignment and probable cause determination "without unnecessary delay." MCR 764.26, MCR 6.104.

What the prosecution fails to acknowledge is that, notwithstanding the fact that defendant was not formally placed under arrest until a later point in time, his seizure and transport to the jail for purposes of fingerprinting and identification constitutes an "arrest" for Fourth Amendment purposes. See *Hayes v Florida*, 470 US 811, 815; 105 S Ct 1643; 84 L Ed 2d 705 (1985). The police therefore could do so only with a warrant or with probable cause for an arrest. *Id*. at 816.

The police did not obtain a warrant, however. And the sole authority that the prosecution cites for the proposition that it had probable cause to seize defendant (without a warrant) for purposes of fingerprinting and identifying him at the jail is *Hayes*. But *Hayes* does not support the prosecution's position. *Hayes* makes it clear that "the line is crossed" into arrest when, "without probable cause or a warrant, officers forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes." *Id*. at 816. The Supreme Court in *Hayes* "adhere[d] to the view that such seizures, *at least where not under judicial supervision*, are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause." *Id*. at 816 (emphasis added). Although *Hayes* leaves open the possibility that the Fourth Amendment might permit "a brief detention *in the field* for the purpose of fingerprinting, where there is only reasonable suspicion not amounting to probable cause," see *id*. at 816, the officers' actions in this case went well beyond a limited seizure in the field.

The officers, lacking probable cause to arrest defendant, should have sought a warrant for defendant's arrest or for his investigatory detention for purposes of identification via fingerprints.[5] Because they did not do so, the controlled substances seized from defendant following his arrest must be suppressed. *People v Stevens*, 460 Mich 626, 633-634; 597 NW2d 53 (1999).

For these reasons, and for the additional reasons stated by the majority, I concur with the majority in reversing defendant's conviction and vacating his sentence.

/s/ Mark T. Boonstra

---

[5] The Supreme Court in *Hayes* additionally noted that "the Fourth Amendment might permit *the judiciary* to authorize the seizure of a person on less than probable cause and his removal to the police station for the purpose of fingerprinting." *Hayes*, 470 US at 817 (emphasis added). In this case, however, the officers did not seek judicial authorization.